JAMES A. STILLMAN, Plaintiff, *v.* ANNE U. STILLMAN, and GUY STILLMAN, Defendants.

(Supreme Court, Dutchess Special Term, April, 1921.)

Evidence — what are confidential communications — letters — husband and wife — divorce — Code Civ. Pro. § 831.

> Letters between husband and wife are confidential communications and their contents may not be disclosed unless the privilege is waived.

> A letter from a wife to her husband, which is a confidential communication and within the prohibition of section 831 of the Code of Civil Procedure, may not be considered, over her objection, upon a motion for alimony and counsel fees in the husband's action for a divorce.

> Matters concerning which plaintiff cannot testify to on the trial, or the hearing upon the merits of a special proceeding, founded upon an allegation of adultery, under section 831 of the Code of Civil Procedure, he will not be permitted to put into his affidavit filed in opposition to a motion for alimony and counsel fees, when defendant objects.

> Upon such motion it is debatable whether letters alleged to have been written by the corespondent to defendant and received by her and claimed to have been thereafter delivered to plaintiff, should be received upon the plaintiff's affidavit unaccompanied by other affidavits, and when defendant objects, such letters will not be considered by the court.

MOTION for permission to serve an amended answer and for alimony and counsel fee.

Cornelius J. Sullivan (Delancey Nicoll, Outerbridge Horsey, of counsel), for plaintiff.

Cadwalader, Wickersham & Taft (John B. Stanchfield and John F. Brennan, of counsel), for defendant Anne U. Stillman.

John E. Mack, guardian *ad litem* for defendant Guy Stillman.

MORSCHAUSER, J. This motion is made by the defendant Anne U. Stillman for permission to serve an amended answer and for alimony and counsel fee. The plaintiff consented to the granting of the order for permission to serve an amended answer, but opposed the motion for alimony and counsel fee.

Before deciding the motion, I deem it proper to pass upon the exhibits: Exhibit "A" the alleged letter from defendant to plaintiff, and the Exhibits "B" to "H" inclusive, consisting of letters alleged to have been writen by the corespondent to defendant and received by her and claimed to have been delivered subsequently to the plaintiff. The defendant objects to the use of these exhibits by plaintiff. Section 831 of the Code of Civil Procedure provides as follows:

"§ 831. When husband and wife not competent witnesses; when competent.—A husband or wife is not competent to testify against the other, upon the trial of an action, or the hearing upon the merits of a special proceeding, founded upon an allegation of adultery, except to prove the marriage or disprove the allegation of adultery. However, if upon such trial or such hearing the party against whom the allegation of adultery is made produces evidence tending to prove any of the defenses thereto mentioned in section 1758 of this act, the other party is competent to testify in disproof of any such defense. A husband or wife shall not be compelled, or without consent of the other, if living, allowed to disclose a confidential communication, made by one to the other during marriage."

Communications and transactions between husband and wife were early recognized as privileged and neither could be compelled to disclose what took place between them and neither was a competent witness to testify as to such transactions or communications of a confidential nature or induced by the marital relation.

Supreme Court, April, 1921.          [Vol. 115.

From experience it was found that far less evil would result from the exclusion of such testimony than from its admission. It may in individual cases work hardship, but the destruction of confidence between a husband and wife would cause much misery and affect the marriage relation. This rule is founded upon sound public policy. Those living in the marriage relation should not be compelled or allowed to betray the mutual trust and confidence which such relation implies. When modified by legislative enactment, no wider interpretation has been given than the plain letter of the law demanded and when by statute the disqualification was removed allowing husband and wife to testify as against each other and compelling them to testify, the rule still obtained and did not affect the exclusion of privileged communications between the spouses under the common law rules. It is applicable, though terminated by divorce or by the death of one of the parties.

Letters between husband and wife are within the protection of the rule as are oral communications, and the contents thereof can not be disclosed unless the privilege is waived. *Bowman* v. *Patrick,* 32 Fed. Repr. 368; *Hopkins* v. *Grimshaw,* 165 U. S. 342.

In the *Bowman* case the wife's administrator found among her papers letters from her husband relating to matters in a suit in which he was then interested. The administrator in a spirit of hostility to the husband delivered the letters to the other side, which sought to use them, and the letters were held privileged.

In the *Hopkins* case, Mr. Justice Gray, delivering the opinion of the court, on page 349, said: "At common law, upon grounds of public policy, husband and wife (with some exceptions not here material) were not permitted, even by consent, to give evidence for or against each other, or to testify, even after the end-

ing of the marriage relation by death or divorce, to private communications which took place between them while it lasted.''

In *Millspaugh* v. *Potter,* 62 App. Div. 521, Mr. Justice Smith said at page 524: '' There it was sought to prove a confession by the wife to the husband which is clearly within the protection of the statute.''

Judge Parker in *Warner* v. *Press Pub. Co.,* 132 N. Y. 181, on page 185 said: '' The evidence offered could have no purpose useful to the defendant unless it tended to show that during such a conversation with her husband she said or did, or omitted to say or do something, from which it might be inferred that there existed an unlawful intimacy between her and Smith.

'' A conversation on such a subject between husband and wife seems to us to be clearly within the protection of the statute.

'' The appellant calls our attention to the decision in *Parkhurst* v. *Berdell* (110 N. Y. 386–393), in which Judge Earl, in speaking for the court, said: ' What are confidential communications within the meaning of the section? Clearly not all communications made between husband and wife when alone.  *   *   * They are such communications as are expressly made confidential, or such as are of confidential nature, or induced by the marital relations.'

'' Clearly, the definition given does not exclude such a conversation as the defendant desired to prove from the protection of the statute. Its nature was not only confidential, but it was apparently induced by the marital relation, for it cannot be conceived that such a topic would have been the subject of discussion but for the existence of such relation between the parties.

''A further test by which to determine whether a communication is confidential is suggested by the learned judge in characterizing the nature of the con-

versations sought to be excluded in that case. He said: ' They were ordinary conversations relating to matters of business which there is no reason to suppose he would have been unwilling to hold in the presence of any person.'

" It can not be supposed that both husband and wife would have been willing to discuss such a subject in the presence of other persons or would have consented to a repetition of the conversation by either party to it. Its nature, and the relation of the parties, forbade the thought of its being told to others, and the law stamped it with that seal of confidence which the parties in such a situation would feel no occasion to exact."

In *Hanor* v. *Housel,* 128 App. Div. 801, said Mr. Justice Sewell on page 803: " It is equally clear that the court did not err in excluding the affidavit of the wife, or that part of the conversation between her and the plaintiff which tended to show that the defendant had had criminal intercourse with her. They were not only **confidential,** but they were apparently induced by the marital relation and clearly within the prohibition of section 831 of the Code of Civil Procedure, which provides that 'A husband or wife shall not be compelled, or without the consent of the other if living, allowed to disclose a confidential communication made by one to the other during marriage.' "

There are actions not founded on the charge of adultery where the communications were held not to be confidential. In actions for alienation of a wife's affection proof of the ill-treatment of the wife by the husband is competent; profane and abusive language used by him to her is not a confidential communication. *Millspaugh* v. *Potter, supra.*

In *Fowler* v. *Fowler,* 33 N. Y. St. Repr. 746, it was held that declarations made by a husband to his wife the second night after the marriage that he did not

love her and had made a mistake in marrying her, which was the beginning of a course of ill-treatment, was not a privileged communication.

*Norris* v. *Lee*, 136 App. Div. 685, was an action on a promissory note made by a husband and wife. A letter was written by the husband to his wife to chronicle his daily doings and stating that he would settle with the plaintiff when he obtained certain moneys. It was held that such letter should not be excluded as confidential communication.

The learned presiding justice of the Appellate Division in this department, Mr. Justice Jenks, said on page 686: " The letter is an ordinary epistle wherein the husband writes to his wife to chronicle the weather, his daily doings, his efforts to find a summer place for the family, and such petty matters. It contains a single sentence which might be pertinent.— ' I will settle with your mother just as soon as I can get my hands on the money from the mortgage which I hope to do next week.' I think that this was not a confidential communication within the inhibition of the Code of Civil Procedure (§ 831)."

It is a debatable question whether Exhibits " B " to " H " should be received upon plaintiff's affidavit unaccompanied by other affidavits. Matters plaintiff cannot testify to on the trial or hearing on the merits of a special proceeding under section 831 of the Code of Civil Procedure he should not be permitted to place in an affidavit on a motion of this kind when the defendant objects. He cannot testify to the handwriting of the defendant or of the corespondent in actions of this kind. The husband or wife in actions for divorce founded on adultery is permitted to testify to the marriage or disprove the allegations of adultery. And section 831 of the Code did not limit the testimony to a denial simply but gave the right generally " to dis-

prove the. allegation of adultery,'' to show that the allegation was not true, and that the defendant could not only deny, but could testify to, any fact or circumstances, within defendant's knowledge, competent and material on the question as to whether the act as charged was committed.

In *Biers* v. *Biers,* 156 App. Div. 409, at page 411, the learned justice (McLennan, P. J.) said: '' This section -has been held to mean that the alleged guilty party is not limited to denying specifically the charges of adultery, but may testify to any fact or circumstance within his or her knowledge, competent and material on the question as to whether the act, as charged, was committed. (*Huntley* v. *Huntley,* 73 Hun, 261; *Stevens* v. *Stevens,* 54 id. 490; *O'Hara* v. *O'Hara,* 136 App. Div. 378.) The effect of these decisions is that in order to ' disprove, the allegation of adultery ' the party charged may testify to facts tending to deny the charges made, or to prove that they were procured to be committed or connived at by the other party to the marriage, or that the offenses have been forgiven and condoned.''

And at page 413 the learned justice said: '' It is urged by the respondent that the provisions of section 831 are intended only to prohibit the husband or wife from testifying against the other upon the issue of adultery in an action for absolute divorce, and that if other issues are tendered by the defendant, such as connivance, or condonation, either party may testify without restraint upon such issues. We are unable to agree with this contention. It is contrary to the plain reading of the statute, and the language of the section has been strictly applied by the courts in all cases, so far as we have been able to find. In *Valentine* v. *Valentine* (87 App. Div. 156) it was held error to allow the wife to testify against her husband concerning his

property and income. In *Dickinson* v. *Dickinson* (63 Hun, 516) it was held error to permit the plaintiff to testify to the fact of her residence where jurisdictional facts were in issue. (See, also, *Finn* v. *Finn*, 12 Hun, 339; *Taylor* v. *Taylor*, 123 App. Div. 220; *Colwell* v. *Colwell*, 14 id. 80; *Budd* v. *Budd*, 55 id. 113.) ''

While the party charged could testify to facts tending to deny the charges made, or to prove that they were procured to be committed or condoned at by the other party to the marriage, or that the offenses have been forgiven or condoned, the plaintiff by his testimony could not disprove it. The decision in the *Biers* case was overcome by an amendment to section 831 of the Code by chapter 181, Laws of 1915, as follows: '' However, if upon such trial or such hearing the party against whom the allegation of adultery is made produces evidence tending to prove any of the defenses thereto mentioned in section seventeen hundred and fifty-eight of this act, the other party is competent to testify in disproof of any such defense.''

Mr. Nichols in his work on New York Practice (Vol. 1, p. 547), said: '' The question as to whether a person incompetent to testify as a witness can make an affidavit which will be considered, and the effect thereof, is of considerable interest, but no positive rule has been laid down in regard thereto in this state. It has been held that where the testimony of the plaintiff would be incompetent, by reason of its relating to a transaction with a deceased person, the plaintiff's affidavit is not alone sufficient to support an injunction and the appointment of a receiver, and that a person serving a sentence on a conviction for a felony, can not make an affidavit. * * *.'' Referring to *Gregory* v. *Gregory*, 33 N. Y. Super. Ct. (1 J. & S.) 1; *People ex rel. Lord* v. *Robertson*, 26 How. Pr. 90. See,

8

also, *Capes* v. *Capes,* 173 App. Div. 142; *Colwell* v. *Colwell,* 14 id. 80.

In the case of *People ex rel. Lord* v. *Robertson, supra,* an insolvent debtor was disqualified from making an affidavit to his petition for his discharge from imprisonment under the insolvent laws and Mr. Justice Lott said at pages 91 and 92: " The disqualification is general. It extends to all cases where the declaration of the party is to be used in a judicial proceeding for the purpose of establishing or proving some fact; and it applies both to written and oral evidence. It is not limited to testimony or evidence on the trial of causes between parties, but in terms applies to all matters civil or criminal. The provision is intended as a rule of evidence, and as protection to the community against the peril of testimony from a person guilty of an offence implying such dereliction of moral principle as in the opinion of the legislature to carry with it the presumption of a total disregard to the obligations of an oath.

" Insolvent proceedings are very important in their consequences, extending, in some cases, to the absolute discharge of debts, and in others limiting parties in the remedies for their collection, and affidavits of the applicant are required, of more or less stringency, to guard against fraud, and for the protection of the rights of creditors to be affected by them.

" There is, therefore, as much if not more reason for disqualifying a person convicted of a felony from making such an affidavit, as there is to disqualify him from being a witness on trial of a cause between third persons.

" The effect and extent of the disability created by the statute of a similar character in England was discussed and considered *In re Sawyer* (2 Adol. & Ellis, N. S. p. 721), and it was held to extend to an

affidavit which had been used to show cause against a rule calling upon another party to answer certain matters, and the court ordered the affidavit to be taken off the files. (See also 1 Greenleaf on Evidence, sec. 374.) "

The affidavit must be made by a person having personal knowledge of the facts and who is legally competent to testify under oath. 2 Cyc. 5.

There are numerous methods by which these exhibits " B " to " H " may be made competent and proved, but not by the testimony of the plaintiff or by his affidavit, where objection is made thereto.

The exhibits should not be considered by me upon this motion. There are many statements in the respective affidavits of plaintiff and defendant that I believe are not competent in a case of this kind. I did not consider them on this motion when I believed they violated the rule.

The plaintiff presents with his affidavit the testimony taken at the hearings before the learned referee as to the acts and conduct of the defendant. She denies these acts and conduct in her affidavit. The trial is pending and she has not been examined. The defendant has amended her answer and charges acts and conduct upon the plaintiff of similar character as charged by him against her and such acts are supported by affidavits of different persons. She does not seek a divorce but pleads recrimination against the defendant as a defense. If the acts and conduct as charged against each other are sustained, neither will be entitled to a decree.

" Sec. 1758. When divorce denied, although adultery proved. In either of the following cases, the plaintiff is not entitled to a divorce, although the adultery is established: * * * (Subdivision 4) Where the plaintiff has also been guilty of adultery, under

such circumstances, that the defendant would have been entitled, if innocent, to a divorce.''

If these charges are established the plaintiff and defendant will find themselves in the same position as before the commencement of the action, except that they will have had their day in court, or perhaps several days, as to matters affecting them, and this all means time, labor and the expenditure of money. The children must be maintained and the defendant must be maintained and supported in a manner corresponding to her rank and position and the fortune of her husband. We must look to all the circumstances of the particular case, in order to award what is fair and just between the parties, for no two cases are alike. The charges against the defendant are very serious and momentous and, if sustained, the consequences would be very serious to her future, even if she should succeed in sustaining the charges against the plaintiff. This case is of great importance to her. It is her right to make a vigorous effort to meet the proof that may be presented against her and to present her defense, not only for herself, but for the ·interests of her children. Aside from these considerations, there is one person in this case who is so young and innocent as not to understand what this action is all about and will not understand until he comes to an ·age of understanding. If plaintiff is successful against the child, the child will bear a stain that cannot be erased and for which he is not responsible. The plaintiff seeks to do that which he believes is his duty to himself and his children. The plaintiff having challenged the paternity of the child, the defendant comes to its protection and to the defense of its legitimacy. This is her duty if she is right in her claim. She vigorously champions the child's cause and this is expected from any mother.

Our law in its wisdom provides for the care and protection of those who cannot protect themselves, especially infants and those of tender years. There is such an infant in this case. The infant is made a defendant and its paternity is questioned. The courts are charged with the duty of protecting it. In this case the infant is represented by an honored and eminent member of the bar, who will protect the infant's interests and give the best that is in him, bringing into play all the learning and ability that the law expects from one placed in such a position of trust. The interests of the defendant and of the infant in this case are to a great extent the same. The contest means much and no mistake should be made. It should not be permitted to be made. Litigation is expensive and troublesome; and such litigation as is anticipated in this case means the bringing of many witnesses from many places and a long and protracted trial. It should not be said that all were not heard that should have been heard. All this means money and time, labor and effort. Proper provision must be made to meet the conditions presented. I believe the counsel fee should be allowed in the sum of $35,000, and $12,500 be allowed for expenses. During the pendency of the action the defendant and the children, and this includes the infant herein attacked, must be provided for. The children, except the infant herein, are of sufficient age to determine with whom they desire to reside during the pendency of the action. Their preference should control in the circumstances as now presented. While the children are with the mother or in her charge, she must provide for their schooling and other necessary expenses. I believe to meet the conditions, the alimony should be allowed in the sum of $7,500 per month.

Order may be presented in accordance herewith

and when signed the stay vacated and the trial pro-
ceed before the learned referee at a time and place
to be agreed upon between the parties, and if the
parties cannot agree, the learned referee may fix the
time and place.

Ordered accordingly.