# EDNA R. BAKER v. JAMES W. BAKER.[1]

June 6, 1947.

No. 34,414.

---

[1]Reported in 28 N. W. (2d) 164.

*Faegre & Benson* and *Raymond Scallen,* for appellant.
*Dorsey, Colman, Barker, Scott & Barber* and *Charles F. Noonan,* for respondent.

MATSON, JUSTICE.

From a judgment and decree awarding her an absolute divorce from defendant and from the court's intermediate order denying her motion for a new trial, plaintiff appeals on the ground that the court erred in awarding to plaintiff an inadequate share of the property, as well as an insufficient amount as permanent alimony and as support money.

Plaintiff and defendant were married on August 5, 1926, and at the time of the entry of the divorce decree they were of the respective ages of 52 and 51 years. The custody of their only child, a son 19 years old, was awarded to plaintiff. The trial court also awarded plaintiff permanent alimony of $250 per month, $50 per month for the support of the son until he attains the age of 21 years, the title in fee to the residence occupied by plaintiff, household goods and furnishings, a 1940 Buick automobile of the approximate value of $1,200, and, in addition, the court required defendant to maintain thenceforth an insurance policy on his life in the sum of $10,000 with plaintiff as sole beneficiary.

Defendant and a Mr. Main for a number of years operated a successful insurance claim-adjusting business under the name of Main & Baker, with offices in Minneapolis. In October 1945, Mr. Main having retired, defendant became sole owner. According to the testimony of defendant's auditor, this business has a net worth of $25,303.82, inclusive of an item of $4,200 for good will. Over a period of five years commencing with 1941 and ending with 1945, the income of this business, before making any deductions for salaries of de-

fendant and Mr. Main, averaged over $26,000 per year. Defendant's net personal income from all sources, after the payment of taxes, according to his testimony and that of his auditor, averaged approximately $9,000 per year over the above-mentioned five-year period. Before the payment of taxes, his net annual average would be $12,980.05.

In addition, defendant owns one-half the capital stock of a small corporation known as Main & Baker, Inc., through which an insurance claim-adjusting business is conducted at Sioux Falls, South Dakota. Defendant's net interest in this corporation is represented by $2,500 in capital stock, plus $2,000 in accumulated surplus representing undistributed profits. If we ignore his interest of $2,000 in the corporate surplus, he has received no income from this enterprise.

Through the Baker Realty Company, a corporation which he organized in 1945, defendant owns an equity of $18,000 in a Minneapolis apartment building, which was purchased by him on the installment plan through a third party in May 1944 for an agreed price of approximately $58,000. There is testimony to the effect that after the payment of interest, depreciation, and operation expenses the building has failed to yield a profit. Since its purchase with a down payment of $10,000, defendant has appropriated $300 monthly from his insurance-adjusting business to apply on the purchase contract, whereby his equity has increased to $18,000.

Defendant is the owner of a boat or river cruiser of an estimated value of $6,000, an automobile (in addition to the one awarded plaintiff) of the value of $1,200, bonds of a face value of $5,900, and also certain cash moneys. He also carries $25,000 in life insurance. According to the testimony adduced for defendant, his entire net worth at the time of the trial amounted to $63,903.82.

Subsequent to the desertion of plaintiff by defendant and in contemplation of the divorce proceedings, plaintiff, by mutual agreement of the parties, received as her own separate property the sum of $18,289.25, being the proceeds from the sale of their former home. Of this sum, $13,500 was used for the purchase of the residence

awarded to plaintiff under the divorce decree. A further sum of $2,250 was spent by plaintiff for new home furnishings. In any event, it is clear that the entire $18,289.25 has been retained in one form or another by plaintiff as her property. There is also evidence that plaintiff acquired and retains as a result of her marriage diamonds worth approximately $1,600.

■ A divorce proceeding involves not merely a termination of marital ties and the adjustment of property rights, but usually, as here, a culmination and determined airing of personal bitterness. The attendant rancor and bitterness make it difficult to obtain dispassionate testimony upon which a trial court can base its adjudication of mutual rights. The trier of fact does, however, have the advantage of hearing and of appraising the witnesses at first hand. Obviously, as an appellate court, we cannot determine issues of fact *de novo,* but must accept any awards for alimony and for the adjudication of property rights unless, in the light of the evidence as a whole, it appears that the trial court has abused its discretion. In Webber v. Webber, 157 Minn. 422, 427, 196 N. W. 646, 647, we said:

"The trial court had means of estimating the true nature and degree of delinquency of the parties, the necessities of the respondent, with respect to which we are comparatively uninformed. We cannot interfere with this award, unless there has been an abuse of discretion which means a discretion exercised to an end or purpose not justified by and clearly against reason and evidence; a clearly erroneous conclusion and judgment—one that is clearly against the logic and effect of such facts as are presented in support of the application, or against the reasonable and probable deductions to be drawn from the facts disclosed. 1 C. J. [Abuse of Discretion, p.] 372."

■ M. S. A. § 518.22, prescribes the limitations within which the trial court must exercise its discretion in awarding alimony and in decreeing to the wife a portion of her husband's real and personal property. These statutory limitations do not give the wife a right to any fixed minimum share in the husband's property and income,

but simply establish limitations as to maximum amounts beyond which the trial court in the exercise of its discretion may not go in making its award. Starks v. Starks, 220 Minn. 313, 19 N. W. (2d) 741; Gerard v. Gerard, 216 Minn. 543, 13 N. W. (2d) 606; Bokelmann v. Bokelmann, 180 Minn. 180, 230 N. W. 638.

■ In determining the amount of property to be decreed out of the husband's estate to the wife pursuant to § 518.22, the trial court may properly take into consideration the entire value of any property held by the parties in joint tenancy when it appears that such property was acquired with funds supplied by the husband. In effecting a property settlement, the husband is not to be penalized because he has seen fit in the course of his marriage to safeguard the interests and welfare of his wife by placing certain property in joint tenancy. There is no merit in plaintiff's contention that only one-half the proceeds derived from the sale of their joint-tenancy home should be considered in determining whether she was awarded a sufficient amount of the husband's estate.

■ In applying the foregoing principles to the facts, we find no abuse of discretion on the part of the trial court. The evidence as to the value of the husband's property and as to the amount of his income was conflicting. Conflicting evidence is to be resolved by the trier of fact. In denying plaintiff's motion for amended findings or a new trial, the court in its memorandum pointed out that plaintiff in receiving the $18,289.25 as proceeds from the sale of the family home had been given a sum which represented roughly 25 percent of the husband's net worth. Exclusive of this sum, defendant admitted a net worth of $63,903.82. Inclusive of these proceeds from the sale, his net worth would be about $82,000. In addition, plaintiff received an automobile and was made the beneficiary of a $10,000 insurance policy to be maintained for her protection. Obviously, the trial court accepted the evidence adduced by defendant as to property values. No purpose will be served in reviewing the conflicting evidence. It may be admitted that the adoption of a higher value would be justifiable; nevertheless, we cannot say that the trial court's findings are not sustained by the evidence as a

whole. Findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole. Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312. We have not overlooked the fact that plaintiff in the early days of marriage contributed $300 to defendant's business enterprise, or the fact that she has coöperated in the accumulation of his estate.

■ In awarding alimony, the needs of the wife, as well as the income of the husband, are to be taken into consideration. In Plankers v. Plankers, 173 Minn. 464, 467, 217 N. W. 488, 489, we said:

"There can be no doubt that where the wife upon a divorce is granted alimony, and such alimony is to be derived solely from the earnings of the husband, *it means the net earnings;* so that under the section cited the amount cannot exceed one-third of the income after deducting the necessary expenses, * * *." (Italics supplied.)

No realist today, in the light of modern income taxes, would contend that such taxes should not first be deducted in determining a man's available net income. Taxes constitute a necessary and inescapable expense. It has been asserted that defendant's available net income will sharply increase because he has succeeded to the interest of Mr. Main's share in the business. It appears, however, that for some time defendant has personally carried the major part of the insurance-adjustment business because of the feebleness of Mr. Main, and there is testimony which the trial court could reasonably accept that defendant purchased Mr. Main's share in order to make room for a younger associate or person so as to relieve himself of a personal work load which had become too heavy. In other words, at least a substantial part of Mr. Main's former income will be absorbed in paying for the services of his successor.

■ Turning to the needs of the wife, it was agreed that she should not be required to pursue gainful employment. Much was made, however, of her nervous breakdown, which occurred shortly after defendant's desertion. The medical testimony was to the effect that at the time of the trial she had made a complete recovery from this and that physically she was free from any organic difficulty. Her

psychiatrist thought it desirable that she be free from financial worries, but frankly testified that he was unable to say whether she would require medical attention in the future. In the light of this testimony, it does not appear that because of ill health she required an alimony allowance in excess of an amount reasonable for a woman of normal health. Both as to plaintiff's need and as to defendant's income, the trial court's award of alimony is sustained by the evidence. In Louden v. Louden, 221 Minn. 338, 342, 22 N. W. (2d) 164, 167, we held:

"* * * The power of the court to revise a decree for alimony is very broad and gives the defendant [wife] ample protection if her future needs, in the light of all the circumstances of the case, justify a revision. Burke v. Burke, 208 Minn. 1, 5, 292 N. W. 426, 428; Hartigan v. Hartigan, 145 Minn. 27, 29, 176 N. W. 180, 181; 2 Dunnell, Dig. & Supp. § 2805."

In consideration of special educational advantages available to the son by reason of his military service, we cannot say that an allowance of $50 support money per month is inadequate. No doubt, as a father of normal generosity, defendant will voluntarily extend this allowance beyond the age of 21 years if the son desires to complete his education and displays reasonable aptitude and application.

Plaintiff, in addition to her costs, is allowed attorneys' fees in the sum of $400 on this appeal.

The judgment and order of the trial court are affirmed.

Affirmed.