# DOROTHY LUCILLE HEMPEL v. ALLEN HEMPEL.[1]

January 9, 1948.

No. 34,545.

[1]Reported in 30 N. W. (2d) 594.

*Briggs, Gilbert, Morton, Kyle & Macartney* and *Donald J. Kelly,* for appellant.

*Hoffmann & Donahue,* for respondent.

PETERSON, JUSTICE.

This is an appeal from an order dated June 23, 1947, awarding plaintiff (a) temporary alimony in the sum of $750 per month for four months from the date of the order; (b) temporary attorneys' fees in the sum of $750 and $25 for costs; (c) the use and control *pendente lite* of a 1947 Cadillac automobile; and (d) a temporary injunction enjoining defendant *pendente lite* from transferring or disposing of any of his property, including the automobile, and income, except such as may be necessary to maintain himself and to comply with the court's order.

The issues on the appeal concern all the relief granted by the order and are: (1) Whether under the circumstances of the case the award of temporary alimony was excessive; (2) whether under the circumstances of the case the award of temporary attorneys' fees was excessive; (3) whether the court had the "power," in view of the litigation without objection and by consent of the parties' property rights, to award to plaintiff the use and control of the Cadillac automobile; and (4) whether the provision of the order enjoining defendant from transferring and disposing of his property and income, subject to the exceptions mentioned, during the pendency of the action, was justified by the evidence.

The action is one for divorce upon the ground of cruelty. It is not necessary to recite the grounds set forth in the complaint or the showing plaintiff made on the merits at the hearing of the motion for the relief in question. The facts, so far as here material, are that the parties were married at Dubuque, Iowa, on May 28, 1947; that plaintiff was then 30 years and defendant 45 years of age; and that after a four-day honeymoon the parties returned to St. Paul. Prior to the marriage plaintiff was employed, earning about $180 per month, and lived at the Ryan Hotel in St. Paul. Her earnings were barely sufficient for her livelihood. She had not been married before.

Defendant has considerable wealth and income. He did not deny that he was worth at least $1,000,000, which he has invested in the stock of various corporations, including Telex, Inc., a corporation engaged in manufacturing hearing-aid devices, and in Saxton-Hempel Company, a corporation engaged in manufacturing loud-speaking and intercommunicating devices. He had a prior marriage which terminated in divorce.

The troubles of the parties began upon their return to St. Paul. Although defendant owned a furnished home, he took plaintiff to the Ryan Hotel, where he left her. There is a dispute as to why he did so. His showing was that it was her wish, and hers was that he wanted it that way so as to keep their marriage a secret and to enable him to carry on amorous affairs with other women. After staying at the hotel for about six days, plaintiff, accompanied by her mother, went to defendant's home, to which she gained entrance forcibly through a window. There she remained until June 15, except for some absences. During the time plaintiff lived in defendant's home she had the use of a 1947 Cadillac automobile, which she kept after they separated. Her showing was to the effect that defendant gave her the automobile as a gift, and that, while he promised to transfer to her the legal title, he did not do so. Defendant denies *in toto* the gift or any promise of one.

Plaintiff showed by allegation in the complaint that an allowance of $1,500 per month was necessary to enable her to live according to the station in life of the parties. In her showing plaintiff states, and defendant does not controvert it, that defendant stated to her that no matter what she did in connection with the case and no matter what the court did he was going to have his own way and that she had no way of preventing him from doing so.

On the issue of the station in life of the parties and defendant's ability to pay, in addition to showing that defendant owned a furnished home and was worth at least $1,000,000, plaintiff stated on information and belief that he had an income of at least $75,000 per year. Defendant did not deny the extent of his wealth, but did deny that his income was as stated. His showing as to the amount

and sources of his income was not detailed and full, but consisted rather of a statement that it consisted of $25,000 per year salary as an officer of Telex, Inc., and "a small amount which he receives from dividends from the shares of stock which he has." Out of his income, he showed that he was obligated to pay to his former wife $6,000 per year as alimony, and income taxes, the amount of which he did not show, but which he asks us to take judicial notice of as being $7,500 per year. Defendant then says, leaving out of view completely his income from sources other than salary as an officer of Telex, Inc., that he has left $11,500 per year, which he contends should be adopted as the basis for determining his ability to pay alimony. As to the precise amount which he thinks should be awarded plaintiff, he makes no statement, except that $200 per month would be sufficient, and that plaintiff is accustomed to live on $30 per week, which she is able to earn by her own efforts. In this connection, it is undisputed that plaintiff has no property or means of support except her earning ability.

At the hearing of the motion defendant did not object to the jurisdiction of the court in a divorce case to grant relief as to the custody, use, and control of the automobile, and not only invoked the jurisdiction of the court to decide the question in his favor, but also to recover exclusive possession of his home and the personalty therein and to have plaintiff ordered to vacate the premises and surrender possession thereof to him forthwith. The court decided in favor of plaintiff so far as the automobile was concerned and of defendant as to the other property. Plaintiff complied with the order— she surrendered the property to defendant and in all things vacated his home.

■ The amount to be awarded as temporary alimony is in the discretion of the trial court, and its decision will not be reversed on appeal except for clearly shown abuse thereof. Stiehm v. Stiehm, 69 Minn. 461, 72 N. W. 708. There is no yardstick for measuring the amount of temporary alimony to be awarded in a particular case. The amount thereof in the particular case depends on the facts. While there is some conflict in the decisions, the better view is that

where the wife has no separate means of her own the allowance should be sufficient to furnish the wife with means of support in accordance with the husband's means and the station in life of the parties during the marriage relationship prior to the commencement of the divorce action. Pedersen v. Pedersen, 71 App. D. C. 26, 107 F. (2d) 227; Falk v. Falk, 48 Cal. App. (2d) 780, 120 P. (2d) 724; Day v. Day, 15 Idaho 107, 96 P. 431; Cooper v. Cooper, 85 Ill. App. 575 (affirmed, 185 Ill. 163, 56 N. E. 1059); Patterson v. Patterson, 4 App. Div. 146, 38 N. Y. S. 637; Powell v. Powell and Jones, 3 L. R. P. & D. 186.

The allowance should not be limited to the wife's bare necessities. Pedersen v. Pedersen, *supra;* Conklin v. Conklin, 186 N. Y. S. 191 (modified on other grounds, 196 App. Div. 607, 188 N. Y. S. 141). While temporary alimony should be awarded cautiously, it is always to be remembered that at the time of the award the woman is still a wife and that the husband still owes her the duty as one arising out of the marriage relation of supporting her as such. The measure of the husband's duty to support his wife is his means and station in life. In Bergh v. Warner, 47 Minn. 250, 252, 50 N. W. 77, 78, 28 A. S. R. 362, we said:

"* * * The term 'necessaries,' in its legal sense, as applied to a wife, is not confined to articles of food and clothing required to sustain life or preserve decency, but includes such articles of utility, or even ornament, as are suitable to maintain the wife according to the estate and rank of her husband."

And as said in the Patterson case, which is closely analogous to the instant one (4 App. Div. 148, 38 N. Y. S. 638):

"* * * In coming to a conclusion as to the amount of alimony, the station in life of the husband, his means as shown by the testimony, including his expenditures, and his apparent condition, should be the criterion as to the proper amount necessary to give the wife suitable support, it being remembered that such suitable support is not simply what will supply her with the bare necessaries of life,

but such a sum as will keep her in the situation and condition in which her husband's means entitle her to live."

Of course the wife should not be placed in a better position by the award than she would be otherwise; but she should not be put in a worse one. The amount awarded should be adequate so far as the husband's means will permit, but it should not be so large as to be oppressive. See, Wilcox v. Wilcox, 222 Minn. 279, 24 N. W. (2d) 237. In applying the rule, the amount awarded necessarily must be large in some cases, as, for example, the $7,500 per month awarded in Stillman v. Stillman, 115 Misc. 106, 187 N. Y. S. 383, and the $1,000 per month in Tibbetts v. Tibbetts, 230 App. Div. 66, 243 N. Y. S. 217, and small in others, as, for example, the $25 per month held to be excessive in Culpepper v. Culpepper, 98 Ga. 304, 25 S. E. 443, and the $12 per month in Snider v. Snider, 182 Ga. 592, 186 S. E. 562. See, 27 C. J. S., Divorce, § 212, cases cited in notes 37 to 41; 19 C. J., Divorce, § 533, cases cited in notes 82 to 84. Whatever the amount, it should be determined according to the rule stated.

In determining the husband's ability to pay temporary alimony, not only his income, but also his property of all kinds, both tangible and intangible, should be considered. Day v. Day, *supra;* Bowsky v. Silverman, 184 La. 977, 168 So. 121. The legislative history of our statutes shows that in the beginning allowances of alimony were payable only out of property, and that the enactment of legislation was necessary to make them payable out of income as well as property. Dahl v. Dahl, 210 Minn. 361, 298 N. W. 361. Hence, we think that here the court properly considered defendant's wealth as well as his income in determining the amount of temporary alimony to be awarded.

We think also that the suggestion that plaintiff be left to her own efforts to support herself without help from defendant, the same as she did before her marriage, or that in any event the amount which defendant should be required to pay should be determined by plaintiff's standards of living before she married him, should be rejected as brutal and degrading. After all, a wife acquires by virtue of the

marriage relationship the right to support by the husband according to his ability and station in life. S. E. Olson Co. v. Youngquist, 72 Minn. 432, 75 N. W. 727; Bergh v. Warner, 47 Minn. 250, 50 N. W. 77, 28 A. S. R. 362, *supra;* 3 Dunnell, Dig. & Supp. § 4273. The husband should not be permitted lightly to escape the duty to support his wife which he voluntarily assumed by entering into the marriage relation. The doctrine suggested by defendant would enable him to do just that. Public policy requires that the marriage relation be maintained sacred and inviolate as the very foundation of human society. To permit a husband to escape by divorce the duty of supporting his wife would be contrary to that public policy—to say nothing of such considerations as fairness and morality—because of its tendency to enable men to have one wife after another, the number of which would depend only on the frequency with which the wives are got and cast aside.

■ Likewise, the amount of the award for temporary attorneys' fees was in the discretion of the court. Burke v. Burke, 208 Minn. 1, 292 N. W. 426. As in the case of temporary alimony, there is no set rule for determining the amount of attorneys' fees. The same factors enter into the picture. In this connection, we should never forget that attorneys are members of a learned profession. The court should consider the importance of the litigation, the responsibility assumed in connection therewith by counsel, the nature and extent of the services to the client, the ability and standing of counsel at the bar, and the amount customarily charged for services of like character. Some guide is furnished in this connection by Watkins v. Bigelow, 96 Minn. 53, 56, 104 N. W. 683, 684, where we said:

"In determining the value of the services of each, the court very properly took into consideration the standing of counsel at the bar, the nature and extent of the services rendered by them, the importance of the questions in issue, and the amount of money involved."

It should be remembered, too, that the possession of wealth provides the possessor with the "sinews of war." A man of wealth can hire

able counsel and enlist the support of other allies. The allowance to the wife's attorneys should be in such amount as to enable her also to hire able counsel, and, so far as possible, make the legal contest one on even terms. Day v. Day, 15 Idaho 107, 96 P. 431, *supra*. In this view, we think that the amount awarded plaintiff's counsel is not excessive, and we so hold.

■ We see no occasion for laboring the question whether the court had "power" to award the use and control of the automobile to plaintiff. The contention that the court did not have "power" to determine the question is equivalent to one that it lacked jurisdiction to do so. Christgau v. Fine, 223 Minn. 452, 27 N. W. (2d) 193. Voluntary litigation by the parties in a divorce case of their respective property rights confers upon the court jurisdiction to determine the questions raised thereby, regardless of whether otherwise the court would have had jurisdiction. Anich v. Anich, 217 Minn. 259, 14 N. W. (2d) 289; In re Petition of Wipper, 176 Minn. 206, 222 N. W. 922; Glass v. Glass, 4 Cal. App. 604, 88 P. 734. See, Briggs v. Kennedy Mayonnaise Products, Inc. 209 Minn. 312, 297 N. W. 342. Here, the parties voluntarily litigated their respective rights not only to the automobile, but also to the personal property in their home and the right to occupy the home. Thereby, defendant not only consented to the exercise of "power," which he now says was lacking, but actually invoked it as to the very automobile now in question. He would deny the existence of the court's power so far as it was beneficial to plaintiff, but would take the benefits it conferred upon him, such as the right to the exclusive possession and use of the home and all personal property therein. The fact that he consented to litigate the question here involved was sufficient to confer jurisdiction, if otherwise it was lacking.

■ In a divorce case, the court may issue a temporary injunction restraining the husband from disposing of his property and income during the pendency of the case, where it appears that contemplated transfers thereof would defeat the wife's claims to alimony and other rights under the final judgment. 27 C. J. S., Divorce, § 103. Here, the question raised is not that the relief granted was exces-

sive, but only that there was no basis for any relief at all. Defendant's statements to plaintiff that he would have his own way in spite of anything she or the court might do, which he does not deny, justified the court in finding that defendant would do anything to nullify the effect of any judgment rendered against him, and that of course included transfers of his property and income as a means to accomplish his declared purposes. Furthermore, defendant's failure to disclose in detail and fully the amount and kind of his property and income evinces, in the light of what he did disclose, a disposition not to pay his wife anything except as compelled to do so by the court.

If so advised, defendant may apply to the court upon a proper showing for a modification of the injunction insofar as it grants excessive relief.

The order should be and it is affirmed. Plaintiff is allowed $500 additional attorneys' fees upon the appeal.

Affirmed.

---

[1] Reported in 30 N. W. (2d) 586.