GRACE BERGQUIST SWANSON v. ARTHUR W. SWANSON.[1]

March 16, 1951.

No. 35,225.

---

[9]See, 3 Dunnell, Dig. § 3915, and numerous cases cited therein.
[1]Reported in 46 N. W. (2d) 878.

*Fred A. Ossanna, Charles T. Hvass,* and *Richardson D. Barrett,* for appellant.

*Van Valkenburg, Blaisdell & Moss* and *Einar Juel,* for respondent.

LORING, CHIEF JUSTICE.

This is an action for divorce brought by Grace B. Swanson against Arthur W. Swanson. The court granted a divorce on the ground of desertion and awarded her $4,000 as permanent alimony, but it did not award any monthly alimony to her. Plaintiff moved for amended findings and conclusions of law or for a new trial on the issues of property settlement and alimony only. This motion was denied, and plaintiff has appealed from the order denying her motion.

Plaintiff and defendant were married June 24, 1930, and this action was commenced May 4, 1948. Plaintiff's age is 45 and defendant's is 52.

Until 1931, plaintiff worked in the Minneapolis Public Library at a salary of approximately $125 per month. In 1931, plaintiff, at her husband's expense, returned to the University of Minnesota to complete her work for a degree of Bachelor of Library Science. Plaintiff completed this course in one year and returned to library work at a salary of approximately $50 per month. At the present time, plaintiff earns $303.20 per month after income taxes and a three-percent pension deduction, or $3,638.40 per year.

At the time of trial, plaintiff's property consisted of some household furniture, approximately $100 in a savings account, $50 in a checking account, and a 1941 Buick automobile.

The trial court found that defendant's net worth is about $40,-000 and that his net income is somewhere between $6,000 and $8,000 per year. However, plaintiff claims that defendant's income in 1948 was approximately $700 per month or about $8,400. Plaintiff moved to have the court amend its findings to conform to the amounts claimed, and, the court having denied the motion,

plaintiff has assigned error on the ground that the court's findings are not supported by the evidence.

After a thorough examination of the evidence so far as it is disclosed in the record, we conclude that none of plaintiff's evidence was of such compelling force that the trial court was bound to amend its findings as requested. The trial court had an infinitely better opportunity to evaluate the evidence than this court has, and there was sufficient evidence to sustain its findings. In such circumstances, we should not disturb the trial court's findings.[2] In any event, since the trial court did not award plaintiff any fixed percentage of defendant's property or earnings, it does not appear that the findings complained of had any appreciable effect upon the award made to her.

The more critical issue in this case is whether the trial court, in light of the findings made, abused its discretion in awarding plaintiff permanent alimony of only $4,000, and in denying her monthly alimony altogether.

The pertinent statutory provision governing property awards and alimony to be paid in case of divorce is M. S. A. 518.22, which reads as follows:

"Upon a divorce * * * if the estate and property restored or awarded * * * [to the wife] is insufficient for the suitable support of herself * * *, or if there is no such estate and property, the court may further order and decree to her such part of the personal and real estate of the husband, not exceeding in value one-third thereof, as it deems just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case. The court may also, in the cases provided for in this section, decree to the wife such alimony out of the estate, earnings, and income of the husband as it may deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties,

---

[2]Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164; Ellingson v. Ellingson, 227 Minn. 149, 34 N. W. (2d) 356; Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176.

and other circumstances of the case, * * *; but the aggregate award and allowance made to the wife from the estate of the husband under this section shall not in any case exceed in present value one-third of the personal estate, earnings, and income of the husband, and one-third in value of his real estate."

The above statute has been construed uniformly to mean that the one-third provision is a ceiling or maximum and not a floor or minimum. In Loth v. Loth, 227 Minn. 387, 400, 35 N. W. (2d) 542, 550, 6 A. L. R. (2d) 176, this court stated:

"* * * While the statute authorizes an award of one-third of the husband's property and income, it does not follow in every case that one-third thereof should be awarded."

In Baker v. Baker, 224 Minn. 117, 120, 28 N. W. (2d) 164, 167, this court stated:

"M. S. A. § 518.22, prescribes the limitations within which the trial court must exercise its discretion in awarding alimony and in decreeing to the wife a portion of her husband's real and personal property. These statutory limitations do not give the wife a right to any fixed minimum share in the husband's property and income, but simply establish limitations as to maximum amounts beyond which the trial court in the exercise of its discretion may not go in making its award."

Within the one-third limitation, the flexible language of § 518.22 confers a broad discretion on the trial court in determining the amount of property and alimony that should be awarded to a wife in a particular case.[3] The standards by which the court's discretion is guided are clearly set forth in the statute quoted above. The court should make a reasonable award, sufficient for the suitable support of the wife, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case.

---

[3]Clark v. Clark, 114 Minn. 22, 129 N. W. 1052; Webber v. Webber, 157 Minn. 422, 196 N. W. 646; Potter v. Potter, 224 Minn. 29, 27 N. W. (2d) 784; Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176.

It appears to us that one of the circumstances of the case, which the trial court properly considered, was the conduct of the respective parties. Although a court is not required to deny a wife alimony or property altogether because of her conduct, unless she has committed adultery,[4] and although alimony should not be awarded as a penalty for a husband's misconduct,[5] it should be relevant to consider the conduct of both parties in making an award to the wife.[6] It should be especially relevant to inquire whether the wife is in a position to complain about the termination of the marriage. The trial court, in a memorandum made part of its findings, concludes that the desire of these parties to live apart was probably mutual, as indicated in part by plaintiff's act in changing the lock on her apartment so that defendant could not gain entrance. In this light, the divorce, granted reluctantly on the ground of desertion, does not put plaintiff in a position to assert either that the misconduct of defendant alone put their marriage asunder or that she has suffered the loss of any cherished relationship. There is further evidence along this line.

It is abundantly clear from all the evidence that the general tenor of the relationship between these parties was one of coolness and selfish indifference, save on those occasions when their individual interests brought them in conflict, in which case the conduct of both parties was, on the whole, unreasonable and uncoöperative.

Plaintiff's primary interests were her mother and her work. Defendant's primary interests were his work and his golf. There

[4]M. S. A. 518.22.

[5]Alimony is awarded to a divorced wife, not as a penalty, but as a substitute for the husband's duty to provide the wife with adequate support. Haskell v. Haskell, 119 Minn. 484, 138 N. W. 787; Webber v. Webber, 157 Minn. 422, 196 N. W. 646; Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58; Wilcox v. Wilcox, 222 Minn. 279, 24 N. W. (2d) 237.

[6]Webber v. Webber, 157 Minn. 422, 196 N. W. 646, where this court indicated that a trial court might properly consider the comparative delinquency of the parties in making an award of permanent alimony. See, also, Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164.

is some evidence that during periods when the couple were living apart defendant's interest also turned to other women. In both cases, the interest of these parties in their home and marriage was nominal at most. The parties lived together only about 10 years of their 20 years of married life. There are no children of the marriage. Their domicile, even when used jointly, appears to have been more of a headquarters than a home.

Although public policy requires that our divorce laws have due regard for preserving the sacred element of the marriage relationship[7]; although marriage relationships are not governed by a pure contract theory[8]; and although our divorce law has been appropriately described as somewhat chivalrous,[9] so far as we can determine no court in this state has held that the conduct of the wife should not be considered as a factor bearing on the amount of the award to which she may be entitled upon a divorce. Sacred as the marriage relationship should be, plaintiff appears not to have cherished her marriage except for the material benefit it gave her. We fail to see that a marriage of this kind will be made more sacred by judicial action directed solely at preserving its most mundane benefits for the wife. We do not wish to imply that in a divorce action marital rights are to be purchased or sold for what they are worth in material and spiritual terms. We hold merely that a wife will not be heard to say that her husband should be held to a full performance of his marital duties where she has neglected to perform hers. This holding is not based upon a strict contract theory, but rather upon the theory that the marriage relationship embodies mutual obligations, which will be more highly regarded if they are mutually enforceable. Our divorce laws should be designed to promote and preserve marital harmony, and to the extent that they encourage even reluctant coöperation between spouses the desired result is

---

[7]See, Hempel v. Hempel, 225 Minn. 287, 293, 30 N. W. (2d) 594, 598; Webber v. Webber, 157 Minn. 422, 426, 196 N. W. 646, 647.

[8]See, Webber v. Webber, 157 Minn. 422, 426, 196 N. W. 646, 647.

[9]See, footnote 8, *supra*.

achieved in increasing measure. It does not seem likely that marital harmony will be promoted if a wife may drive her husband from her without prejudice to her claim for alimony and property.

Other factors considered by the court were that the plaintiff has a fairly secure position working for the public library, for which she receives a salary of $303.20 per month after income taxes; that her income is substantially in excess of one-third of defendant's net income; that she will receive a small old-age pension; that defendant's net income is badly needed for paying principal and interest on his rather large debts; and that defendant's property is not susceptible of a division. Although the last two factors mentioned should not be unduly stressed, these are all factors bearing on the ability of the husband and the character and situation of the parties generally. The greater portion of defendant's assets was invested in property used in his profession and in four life insurance policies. The loss that would result from a forced liquidation of defendant's assets and the consequences of reducing defendant's net income to a point where he could not meet his debts are relevant factors to consider in determining the husband's ability to give a greater property settlement and to pay alimony.

Although plaintiff testified that her personal expenses have been approximately $4,100 a year and that it is thus obvious that her income is not sufficient to maintain her in the manner to which she has become accustomed during her married life, the duty of her husband to maintain her according to the station in life which she enjoyed while married has reasonable limits and should also have some relationship to the standard of living which her husband enjoys. Defendant's undisputed testimony was that his personal living expenses are approximately $2,364 a year, which is approximately half as much as plaintiff spends. If plaintiff were maintaining the same station in life that her husband presently enjoys, she would be well within her income. In this situation, the cases cited by plaintiff for the proposition that

a husband has a duty to support his wife according to his ability and station in life are inapplicable.[10]

Hempel v. Hempel, 225 Minn. 287, 30 N. W. (2d) 594, cited by plaintiff as controlling and decisive of the issues in this case, is particularly inapplicable to the facts before us here. First of all, it arose in a significantly different procedural setting. The Hempel case, unlike the present case, came before the court on an application for temporary alimony pending divorce rather than upon application for permanent alimony after divorce. It is further distinguishable on the facts, for a comparison of the husband's ability to pay, as compared with the wife's ability to support herself, showed a greater disparity than in the present case. The husband in the Hempel case had an alleged income of at least $75,000 a year, and his admitted net worth was at least $1,000,000. His wife had no property and was earning only $120 a month.

Plaintiff stresses the fact that she might have acquired greater personal wealth had she saved her own earnings during their marriage. Having spent her own earnings, she contends that she has, in effect, contributed to her husband's wealth so that a greater part of his property should be regarded as hers. It appears, however, that most of plaintiff's earnings were devoted to the care of her mother, the purchase of some of plaintiff's clothing, and the purchase of various articles used about the home. It certainly was not defendant's duty to support plaintiff's mother, and there is no reason to believe that he is any wealthier by virtue of the fact that plaintiff did so. So far as house furnishings are concerned, it appears that both times when the parties broke up housekeeping plaintiff took the greater part of these furnishings. The extra clothing which plaintiff purchased for herself was probably purchased more freely than would have been

---

[10]Hempel v. Hempel, 225 Minn. 287, 30 N. W. (2d) 594 (and pertinent cases cited therein); Burton v. Burton, 160 Minn. 224, 199 N. W. 908; Urban v. Urban, 149 Neb. 757, 32 N. W. (2d) 410.

the case if plaintiff had not enjoyed an independent income. There is little merit, if any, in plaintiff's contention that her contribution to defendant's property has been substantial, and the trial court's finding to that effect must stand.

Plaintiff had the burden of showing that the trial court abused its discretion in the matter of granting her a suitable award,[11] and we think she has failed to make the required showing.

Affirmed.

---

[11]Webber v. Webber, 157 Minn. 422, 196 N. W. 646; Starks v. Starks, 220 Minn. 313, 19 N. W. (2d) 741; Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164.

