## ADOLPH R. BORCHERT v. BEVERLY J. BORCHERT.

154 N. W. (2d) 902.

December 15, 1967—No. 40,685.

*James K. Rietz* and *Rietz & Rietz,* for appellant.
*William J. Nierengarten,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying plaintiff's alternative motion for amended findings or for a new trial in a divorce action.

While much of the evidence is in dispute, viewing the evidence in the light most favorable to the findings, as we must, it appears that Adolph and Beverly Borchert were married on September 21, 1950. At the time of the trial plaintiff was 44 years of age and defendant was 34 years of age. Six children were born to the marriage, namely, Michael, born April 26, 1951; Denise, born April 16, 1952; Kevin, born July 22, 1955; Jeffrey, born March 31, 1958; Wendy, born March 29, 1959; and Mary, born March 10, 1961.

While the parties continued to live together as husband and wife until shortly before the commencement of the action for divorce, it does appear that the marriage was not too harmonious from the very beginning. Defendant testified that she and her husband never got along together; that he neglected the children; and that he beat both her and the children at times.

Along about 1963 Mrs. Borchert became involved with one Marvin Heinz, with whom she associated from time to time. They were seen in various places together and at one time she "accidentally" met him in St. Cloud, where they shared a motel room for part of the day. She left the home of the family and procured an apartment in Rochester, Minnesota, in 1965. It appears that thereafter Mr. Heinz spent several nights at her apartment; and while she claims there was nothing intimate about the relationship, it was, to say the least, suspicious. At one time the deputy sheriff of Olmsted County was asked to investigate the apartment and he found Mr. Heinz there, coming out of the bathroom with his belt unbuckled, his shoes untied, wearing a T-shirt, with his outer shirt hanging in the living room. While the divorce action originally was based on cruel and inhuman treatment, after this episode in Rochester plaintiff amended his complaint so as to allege adultery. Defendant claims that Heinz was with her in the apartment in Rochester only because she was upset and needed someone to soothe her, and she denies that she had any intimate relations with him at any time.

By an ex parte order, on July 1, 1965, plaintiff was given possession of the homestead and custody of the children. Shortly thereafter defendant went to live with her parents in Owatonna and on September 1

moved into the apartment in Rochester as we have stated above. On March 24, 1966, defendant made a motion seeking to gain custody of the children, but apparently this motion was not determined prior to the trial. The case was tried to the court without a jury on July 11, 1966.

The court found that both parties were guilty of cruel and inhuman treatment and granted a divorce to plaintiff husband. It made no finding on the issue of adultery.

Over the years plaintiff had accumulated quite a sizable amount of property. The court found that he was the owner of his homestead, valued at $18,500. Plaintiff claims this is grossly undervalued, and that it was worth around $29,000. The court also found that plaintiff owned a cottage and lot on Lake Titonka, for which no value appears in the record; a duplex and an apartment house worth $20,000; a half interest in property leased to the Steele County Implement Company, valued at $21,500; 20 acres of unimproved land, valued at $2,300; stock in the Owatonna State Bank, valued at $1,600; a savings account of $5,000; a promissory note from the Steele County Implement Company, on which the balance due was $30,759.35; insurance policies having a cash surrender value of $9,620.90; one-half of the stock of the Steele County Implement Company, such stock having a book value of $78,367.98; making a total value, as found by the court, of $187,648.23, without placing any value on the lake cottage and lot. While there is a dispute between plaintiff and defendant as to the value of some of this property, particularly the homestead and the half interest in the Steele County Implement Company, which plaintiff contends is not worth book value, the evidence would sustain the court's finding; and no matter which way we look at it, plaintiff's property had a value of somewhere between $150,000 and $200,000, depending on whose testimony we rely upon.

It should be added that some of this property was acquired by plaintiff from his father, through gifts and inheritance, and he had an interest in the implement company prior to his marriage. He is an officer of the implement company and his income, as shown by the record, for 1962 was $14,802.88; 1963, $14,949.14; 1964, $17,680.35; and 1965, somewhat over $20,000.

The court awarded to the defendant the homestead of the parties, valued, as he found it, at $18,500; $40,000 as lump-sum alimony; all household goods and equipment excepting plaintiff's personal effects; and $6,000 attorney's fees. Plaintiff was given all remaining property. Defendant was awarded the custody of the four younger children and plaintiff was required to pay for their support the sum of $240 a month until they reach their majority, with payment to diminish at the rate of $60 per month as each attained majority. Plaintiff was awarded the custody of the two older children.

Defendant during the marriage was not employed, but after leaving the home and going to Rochester, she was employed in a florist's shop where she earned a gross amount of $275 per month.

On this appeal plaintiff claims that the record discloses bias on the part of the trial judge. While he does not ask for any particular relief on account thereof, we assume that he asserts, at least inferentially, that there should be a new trial on that ground. Aside from that claim, he claims that the court abused its discretion in awarding the four younger children to the wife, in the division of property and award of alimony, and in the award of attorney's fees to defendant's counsel.

With respect to the claim of bias on the part of the trial judge, all that needs to be said is that we have examined quite a voluminous record and while there are some remarks made by the trial court that might indicate bias, we think the remarks go both ways and that the court was as fair to one party as to the other. We see no object in discussing this claim in detail.

■ With respect to custody of the children, everyone who testified on the subject, including both parties to the action, was of the opinion that the children should be kept together, no matter who had custody. The two older children were examined by the trial court and while they expressed a preference to be with their father, they also felt that the family should be kept intact. The only ones who felt otherwise were the county welfare workers who made an examination of the family at the request of the trial court. However, custody of the children is a matter that rests so largely in the discretion of the trial court that we are reluctant to interfere with it, even here, where it appears to us that it

would have been better to have awarded the custody of all the children to one parent or the other, with proper rights of visitation granted to the other. While the life of defendant has been, to say the least, indiscreet, we have frequently held that a bad wife does not necessarily mean a bad mother, and that children of tender years are normally better off with the mother than with the father. We think that rule applies here and, at least for the time being, if proper arrangements can be made so that the children can be together at times, the division of custody might be the proper solution; and if it is not, it can always be changed in the future. For that reason we are unwilling to interfere with the court's decision awarding custody. Here, as always, the primary consideration is the welfare of the children.

■ With respect to the award of alimony and division of property, about all we can say is that here, too, the court has a wide discretion. While the award, in the light of the conduct of the wife, appears to be liberal, we do not believe it is so liberal that it can be said to be an abuse of discretion by the trial court. Plaintiff has a substantial income and earning capacity, while defendant has very little of either and, if she is to give proper care to the children, probably she has none. She was awarded (depending on the valuations accepted) about 30 percent of plaintiff's property. Although it is true that much of this property had its inception in inheritances and gifts made to plaintiff, the property acquired by him during coverture is still substantial.

While the trial court made no finding on the allegation of adultery and we do not propose to do so, in the light of the evidence in this record it should be said that prior to 1951 the adultery of the wife might have barred her right to any alimony, Minn. St. 1949, § 518.22. L. 1951, c. 551, § 15, repealed this provision and the statutes we now have were enacted in its place. The present law is to be found in Minn. St. 518.58, 518.59, and 518.60. Under these provisions the court is given quite broad discretionary powers in providing for a division of property and in awarding alimony. However, ever since Buerfening v. Buerfening, 23 Minn. 563, the delinquency of a wife has been one of the elements to be considered in determining the division of property and the amount of alimony to which she is entitled. The later cases

respecting this subject are collected in Swanson v. Swanson, 233 Minn. 354, 46 N. W. (2d) 878,[1] and Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762.[2] In the Buerfening case it was held that while adultery of a wife does not necessarily bar the right to alimony, an adulterous woman cannot stand, in regard to alimony, on an equal basis with one whose conduct is irreproachable. The same should be true of a wife whose conduct has been so indiscreet as to lead to a well-founded suspicion of adultery. However, in this case there is evidence that the husband was not entirely blameless in causing the disharmony that in all probability ultimately led to the breakup of the marriage; and even though the award to the wife under the circumstances does seem liberal, we should not interfere with it.

■ With respect to attorney's fees, we must again say that the determination of the amount to be allowed a wife's attorney rests largely in the discretion of the trial court and normally will not be disturbed unless there is a clear abuse of discretion. Ward v. Ward, 262 Minn. 249, 114 N. W. (2d) 273. However, this court is committed to the policy that courts should follow a conservative policy in awarding attorney's fees. Burke v. Burke, 208 Minn. 1, 292 N. W. 426. Thus, discretion to be exercised is judicial discretion and is not unlimited. The elements that should be taken into consideration are adequately stated in Ward v. Ward, *supra*, and Hempel v. Hempel, 225 Minn. 287, 30 N. W. (2d) 594. Here there was no proof of the value of defendant's counsel's services. About all that appears is a letter and a statement itemizing, without placing a value thereon, some of the work done by defendant's counsel. It would seem that the amount allowed far exceeds the fees established by the bar association for the county in which the action was tried, at least in the absence of proof to the contrary. Comparison with other cases is of little value except to show that probably the amount allowed was excessive. While ordinarily we would sustain the court's allowance of attorney's fees where it is within reason, when the fees reach the amount allowed here we think there should be some

---

[1] Decided before the 1951 amendment.
[2] Decided after the 1951 amendment.

proof of the amount of work done and the value of the services rendered. As a matter of fact, defendant's attorney actually received $6,200 because he had already been allowed $200 prior to the granting of the divorce. It must be kept in mind that the fees allowed defendant are for payment of the losing party's attorney. They need not necessarily represent the full compensation of counsel since, if his services are worth more than the amount allowed by the trial court, there is nothing to prevent him from requiring his client to contribute to his compensation.

We are inclined to feel that the court may have abused his discretion in the allowance of attorney's fees and, without so holding, we remand the case to the trial court for reconsideration so that defendant's counsel may introduce whatever evidence he wishes with respect to the value of his services. We believe that in this case the amount allowed should not be based upon guesswork.

No costs or disbursements or attorneys' fees will be allowed in this court. In reconsidering the amount to be allowed, the trial court may consider the work done on this appeal and the expenses defendant has been put to.

Remanded for reconsideration of attorney's fees.