# JEANETTE PETERSON v. RICHARD PETERSON.

242 N. W. 2d 103.

May 14, 1976—No. 45668.

*Grathwol, Ploetz, Oberhauser & Nodland* and *Raymond C. Ploetz,* for appellant.

*Robins, Meshbesher, Singer & Spence, Ronald I. Meshbesher,* and *John P. Clifford,* for respondent.

*Russell, Russell & McLeod* and *James H. Russell,* amicus curiae, seeking reversal.

*Gordon, Kauffman & Metchnek, James Metchnek,* and *Robert J. Levy,* amicus curiae, seeking affirmance.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from an order for judgment and decree of dissolution of the marriage relationship between the parties, entered on January 23, 1975, in the Hennepin County District Court. Respondent below, Richard Peterson (hereafter respondent), seeks review of the trial court's division of property and alimony award. We affirm.

On July 15, 1972, Richard Peterson commenced an action for divorce against Jeanette Peterson (hereafter petitioner) which was, upon the parties' reconciliation, dismissed with prejudice by stipulation on February 28, 1973. The instant proceeding was commenced by Jeanette Peterson by service of summons and complaint on October 1, 1973.[1]

As the focal issues upon appeal concern the propriety of the distribution of property and of the alimony award, the financial circumstances of both parties are relevant. This proceeding sought to terminate a marriage of over 17 years which had pro-

---

[1] Although this action was originally commenced to secure a divorce, the trial court ordered upon motion that the complaint be amended in form to a petition for dissolution of marriage pursuant to L. 1974, c. 107. As such, the matter was governed by those statutory provisions dealing with dissolution of marriage.

duced three children: a daughter, then age 8, and two sons, then ages 13 and 16. At the time of the proceeding, the petitioner was 36 years old and employed as a bank teller, with net earnings of $342.02 per month. Her living expenses totaled $591 per month. The respondent was 42 years old and employed as a wholesale food broker, with net earnings of approximately $1,130.74 per month plus an automobile allowance of $115 per month. His monthly living expenses approximated $1,201.19.

The significant assets of the parties which were distributed by the court included a homestead subject to a mortgage in the amount of $17,769.32 and to a recorded attorney's lien in the amount of $6,022.60 in favor of respondent's attorney. The value of the homestead is apparently in dispute, for while petitioner contends that its value is $35,000, respondent has valued it at $41,000. The liability for the monthly mortgage payments was included in petitioner's statement of monthly living expenses. In addition to the homestead, the parties had accrued passbook savings in the amount of $15,416.13 and income tax refunds totaling $2,195.68.

The respondent's liabilities at the time of the proceeding, in addition to the home mortgage and attorney's lien, totaled approximately $11,562.66.

Upon dissolution of the marriage, the lower court ordered that custody of the daughter be awarded to petitioner and custody of the two sons be awarded to respondent. In lieu of further alimony, petitioner was awarded the homestead subject to the existing mortgage; $150 per month in child support; judgment in the amount of $1,650 for 50 percent of the pastdue mortgage and support payments; and reimbursement for monies expended by petitioner to reduce the pastdue 1973 Federal tax liability. Personal property was distributed to each party consistent with possession at the time of the order for judgment except for certain enumerated items held by petitioner which were awarded to respondent. Respondent was ordered to assume liability for the maintenance of health and life insurance policies for the benefit

of the children; to discharge pastdue 1973 Federal tax liability in the amount of approximately $1,800; and to discharge and satisfy the attorney's lien on the homestead. Finally, the court reserved ruling upon the issue of respondent's contempt in his failure to remit mortgage and support payments for the period from June 1974 to December 1974.

Respondent assigns as error the distribution of property and the alimony award; the failure of the trial court to consider, solely for purposes of property distribution, evidence of petitioner's marital misconduct; and the court's failure to rule upon the issue of respondent's contempt for pastdue child-support and mortgage payments.

■ Respondent initially asserts that the lower court abused its discretion in its award of alimony and property distribution, in that it failed to adequately consider the comparative circumstances and liabilities of the parties. In addition, he asserts that no consideration was given to his allegations that petitioner had dissipated the assets during the pendency of the proceeding.

In Bollenbach v. Bollenbach, 285 Minn. 418, 426, 175 N. W. 2d 148, 154 (1970), we stated:

"It is axiomatic that in divorce cases the district court must be accorded a broad discretion with respect to the division of property, allowance of alimony, provision for the custody and support of the children of the parties, and allowances for expenses of litigation. * * * Minn. St. 518.58 permits the trial court to make such disposition of property acquired during coverture as 'shall appear just and equitable, having regard to * * * all the facts and circumstances of the case.' "

Upon application of this standard to the facts of record, we find that there has been no abuse of discretion.

Respondent argues that the trial court did not adequately consider his accumulated debts, including his Federal tax liability and the attorney's lien, and his need to provide for the two children in his custody. In addition, at the time of trial he had an

overdue debt of $7,527.81 and a total debt, exclusive of the mortgage on the home and exclusive of attorneys fees for this action, of $11,562.66. Respondent earned an average monthly net income of $1,130.74 plus $115 auto allowance, with monthly expenses of $1,201.19. Petitioner, on the other hand, had net earnings of $342.02 per month and had monthly living expenses of $591, including mortgage payments of $204 per month.

The trial court clearly considered these circumstances as is evidenced by the reduction of the amount of support from $200 per month plus the mortgage payments to $150 and of the mortgage payment arrearages of respondent by 50 percent from $3,307.98 to $1,650, as well as by the award of a portion of the household furniture to him. In addition, as the court specifically found that respondent and petitioner had agreed at the time of filing the 1973 income tax return that respondent would assume responsibility for the Federal tax liability, its order is consistent with that agreement. The attorney's lien was filed by respondent's attorney and would have no relationship to petitioner. Under these circumstances, the property division and alimony award has an acceptable basis in fact and principle.

Respondent's contention that his wife dissipated their savings account and concealed assets in anticipation of and during the pendency of the proceeding has no basis in fact. Rather, the record indicates that $7,405 of the $13,412.31 petitioner had withdrawn was applied to pastdue Federal and state tax liability and attorneys fees pursuant to a court order. The remaining amount was consumed by the petitioner during the period from September 29, 1972, to September 29, 1973, for living expenses. Finally, the record discloses that income tax refunds in the amount of $2,195.68 had been expended by petitioner during this proceeding pending her receipt of support payments.

■ Respondent next contends that the trial court erred in failing to admit and consider evidence of the alleged marital misconduct of the petitioner in its distribution of property and award of alimony. At issue is an interpretation of legislative intent in

amending Minn. St. 1971, § 518.06, to remove all consideration of fault from grounds for dissolution of the marriage relationship and the amendment's effect upon statutes dealing with alimony and property distribution. An historical perspective of this court's review of property distribution and award of alimony is a necessary preliminary to judicial consideration of this legislative intent.

As early as 1877, this court discussed the propriety of consideration of marital misconduct for these purposes in Buerfening v. Buerfening, 23 Minn. 563, 564 (1877), in which we stated:

"But, while the adultery of plaintiff is not necessarily a bar to the action in such cases, it is proper to be pleaded, as a total or partial defence, to the claim for alimony. An adulterous woman cannot stand, in regard to alimony, the equal of one whose conduct is irreproachable. In determining the amount to be allowed, the good or bad conduct of the parties is always material."

An evolution of this position resulted years later in our determination that such misconduct is one of the elements the trial court, in the exercise of its broad discretion, should include in the facts and circumstances relevant to the division of property and award of alimony. Borchert v. Borchert, 279 Minn. 16, 20, 154 N. W. 2d 902, 906 (1967).

In Ruprecht v. Ruprecht, 255 Minn. 80, 90, 96 N. W. 2d 14, 23 (1959), we enumerated possible factors to be considered prior to property distribution:

"* * * In exercising sound discretion the court may consider the ages of the parties and the earning ability of each; the conduct of their marriage and its duration; the station they occupy in life; the circumstances and necessities of each; the probability of continuing present employment into the future, as well as the capacity and ability to obtain new employment under changing circumstances and needs; the financial circumstances of the parties as shown by the property acquired, together with its

value and income-producing capacity; the accumulated debts and liabilities if any; and all facts with respect to whether the property of the parties has been accumulated before or after marriage. The court may also consider all other matters disclosed by the evidence."

Upon adoption in 1974 of "no-fault divorce" legislation which substituted the broad concept of "irretrievable breakdown"[2] upon certain evidentiary findings[3] for the former grounds, the legislature simultaneously amended Minn. St. 518.58, 518.59, and 518.55 dealing with property division and alimony and support payments.[4] In the absence of express language elucidating legislative intent, we must determine whether that body intended by implication to exclude all evidence of fault[5] or marital misconduct for these purposes. On review of foreign court interpretations of similar legislation, we find them to be indeterminative and conflicting.[6]

---

[2] Minn. St. 518.06, subd. 1.

[3] Minn. St. 518.06, subd. 2.

[4] Senate File 1819 and House File 1150 were introduced for consideration in 1973, although not passed, and would have removed fault from consideration in the disposition of property. In addition, the 1975 legislature considered Senate File 1387 and House File 1458, which also would have expressly removed fault from consideration in property distribution. Although these bills were referred to committee, they were not otherwise acted upon by the legislature.

[5] See, Clark, *Divorce Policy and Divorce Reform,* 42 U. of Colo. L. Rev. 403, 410, which notes: "It should be recognized, however, that the elimination of fault as grounds for divorce does not necessarily or logically dictate its elimination from questions of property."

[6] In Kretzschmar v. Kretzschmar, 48 Mich. App. 279, 210 N. W. 2d 352 (1973), the Michigan Court of Appeals noted that the Michigan Law Revision Commission had included a recommended revision of alimony awards and property division laws in its 1970 report to the legislature. Upon the legislature's refusal to enact that proposal when modifying the applicable standards for granting a divorce, the court concluded that despite enactment of a "no-fault divorce" law, those elements previously relevant to a property distribution remain viable.

See, also, Flanagan v. Flanagan, 270 Md. 335, 311 A. 2d 407 (1973)

An examination of the policy considerations supportive of "no-fault divorce" leads to recognition that it is based upon an attempt to minimize the bitterness[7] which is often the result of protracted litigation to lay blame upon one party in order to terminate the marriage. Previously, to satisfy the court that a decree of divorce was necessary, one or both of the parties in some instances manufactured evidence of one or another of the enumerated grounds of Minn. St. 1971, § 518.06. We also recognized the difficulty and obfuscation involved in attempting to determine fault under that statute, for factors evidencing fault

---

(where the Maryland Court of Appeals noted that the variety of foreign state decisions in this matter is due to the individual language employed in the various statutes) and Chapman v. Chapman, 498 S. W. 2d 134 (1973) (in which the Kentucky Court of Appeals interpreted its statute to allow a court to consider fault to determine the amount of maintenance, but not in preliminary decisions as to whether maintenance itself is proper).

*Contra*, In re Marriage of Williams, 199 N. W. 2d 339 (Iowa 1972), in which the Iowa Supreme Court held that implied in similar reform in that state's divorce law was the conclusion that fault was no longer a consideration in determining alimony, support, or property distribution. The Divorce Study Laws Committee of Iowa had proposed that all evidence be admissible in determining marital dissolution. The legislature rejected this recommendation and eliminated all grounds predicated upon fault.

See, also, Uniform Marriage and Divorce Act, §§ 307, 308, 309; and Cal. Civ. Code, §§ 4509, 4800, which eliminate fault from property distribution on dissolution of marriage.

[7] Clark, *Divorce Policy and Divorce Reform*, 42 U. of Colo. L. Rev. 403, 405: "* * * The matrimonial offenses which are listed as grounds for divorce are not usually the basic psychological causes of marital failure, but more often are either symptoms of that failure, or are pretexts for escaping from the problems of marriage. Thus, the offense alleged should be seen as only one symptom of a larger problem—the overall disintegration of the marriage. The responsibility for the breakdown of the marriage is frequently shared by both spouses; hence, the present legal theory that one spouse is guilty and the other innocent is unrealistic."

See also, Note, 47 Notre Dame Lawyer 959, 972.

are often merely symptomatic, rather than causal, of marital breakdown.[8]

A review of the appropriate amending legislation, limited in scope to the grounds upon which a marital relationship may be dissolved, together with general policy considerations precipitating this amendment, leads to the conclusion that evidence of marital misconduct should, upon a showing of proper circumstances, be considered by the court for purposes of property division and award of alimony.[9] The admission of evidence of marital misconduct is within the broad discretion of the trial court based upon its consideration of the various factors presented upon individual petitions. We anticipate that the court will, consistent with our past pronouncements of suggested enumerated factors,[10] consider evidence of marital misconduct as only one of many factors upon which it bases its decision.

■ In the instant case, the alleged misconduct preceded the dismissal of the husband's earlier complaint for divorce and the parties' subsequent reconciliation. The evidence is remote to the instant proceeding and the refusal of the court to consider it was not error. Kugling v. Williamson, 231 Minn. 135, 42 N. W. 2d 534 (1950). The court properly concluded in the instant matter that such remote evidence of marital misconduct was insufficient to accord it the status of a "prevailing factor" of property division:

---

[8] In Bollenbach v. Bollenbach, 285 Minn. 418, 434, 175 N. W. 2d 148, 158 (1970), we stated: "* * * [T]he assessment of fault in the ordinary divorce action is most difficult and * * * the dissolution of a marriage is the result frequently of a series of circumstances so complicated as to defy accurate fault assessment."

[9] As we stated in Swanson v. Swanson, 233 Minn. 354, 360, 46 N. W. 2d 878, 882 (1951): "* * * It does not seem likely that marital harmony will be promoted if a wife may drive her husband from her without prejudice to her claim for alimony and property."

See, also, Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. 2d 762 (1956).

[10] See, Borchert v. Borchert, 279 Minn. 16, 154 N. W. 2d 902 (1967), and Ruprecht v. Ruprecht, 255 Minn. 80, 96 N. W. 2d 14 (1959).

"* * * Further, from what the Court has heard here and in chambers relative to the assets, and both parties might at this point recognize it, there obviously is not going to be enough to go around to make either party happy whatever the Court's ultimate ruling is, and the Court is not going to employ fault as a prevailing factor in making those judgments. I'm trying to—the Court's going to attempt to divide the assets in as equitable a fashion as possible."

Respondent finally asserts that the trial court erred in reserving the issue of contempt for his failure to comply with prior orders of the court directing him to satisfy mortgage payments and provide support. As a conditional order directing punishment only upon respondent's failure to purge himself of his contempt, such is not a final order and is therefore nonappealable. Becker v. Becker, 300 Minn. 512, 217 N. W. 2d 849 (1974).

Affirmed.