**Jerome V. LaPOINTE, Petitioner, Appellant,**

v.

**Naomi R. LaPOINTE, Respondent.**

**No. 48355.**

Supreme Court of Minnesota.

Nov. 9, 1978.

Vesely, Miller, Keefe, La Bore & Stephan, Hopkins, for appellant.

Perbix, Harvey, Simons & Thorfinnson, Hopkins, for respondent.

PER CURIAM.

In this marriage dissolution proceeding, instituted by the husband after 10 years of

---

separation, the wife did not oppose dissolution of the parties' marriage but sought alimony and property division. The trial court awarded her alimony and the husband appealed from an order denying his motion for a new trial, contending that the award was improper. We affirm.

The parties married in 1948 and are the parents of five children, the youngest of whom became 18 years old in August 1976. Marital discord developed in about 1962 when appellant began to drink excessively and absent himself from home for periods of a few days or weeks. In 1966 he left the home and lived with another woman for a short time. When respondent discovered this, appellant returned home for a few weeks during which he continued to drink excessively. In May 1966 he left the home permanently. Thereafter he regularly sent respondent $650 per month, increasing it to $700 in 1970, but made no effort to have contact with the children. He did not reduce the payments as the children became 18, apparently because both parties desired that all of the children attend college. Appellant continued to furnish his family health insurance and retained respondent as beneficiary of a group life insurance policy and the retirement plan furnished by his employer, and the parties filed joint Federal income tax returns until 1975.

Shortly after leaving their home, appellant requested respondent to obtain a divorce, but she refused to do so because she did not believe in it. Appellant commenced this proceeding for dissolution of the marriage in June 1976 and stopped sending checks to respondent after July 1976 although after the institution of the proceeding he continued to pay college tuition for the younger children and at the time of trial in July 1977 had paid $1,775 for such tuition.

When the parties married, respondent brought savings of $300 or $400 to the marriage and a $1,000 life insurance policy which was soon cashed to obtain an automobile. When appellant left their home in 1966, he took only his clothing and a Volkswagen. The parties were purchasing their home, their only major asset, and respondent and the children continued to live in it until 1971. At that time she decided to move to Boulder, Colorado. The parties then sold their home, realizing a net profit of $13,222.23 of which appellant received $3,222.23 and respondent the balance of $10,000. The parties apparently agreed that she would use that amount to purchase a suitable home in Colorado for herself and two of the children. She made a downpayment of $6,000 for a house in Boulder and put the balance in a savings account, ultimately using it for living expenses. Shortly after the move to Colorado, a son who had been attending college in Minnesota had a breakdown and came to live with respondent and in 1973 the parties' oldest daughter also came to respondent's home to live. Since the house did not meet the family's needs, respondent sold it, obtaining a net profit of $10,744.82. She then purchased her present home for $38,500, assuming a mortgage of $30,800 and making a downpayment of $7,700. Appellant co-signed a note for $30,800 to facilitate the purchase.

Respondent had obtained employment as a secretary shortly before the parties' separation in 1966 and got similar employment after going to Colorado. She has received merit and cost-of-living increases and at the time of trial had a gross salary of $13,000 a year with a net monthly take-home pay of $650. She hoped to obtain further cost-of-living adjustments but said there is no opportunity for advancement. At the time of the separation appellant, a draftsman at Honeywell, was taking home $1,024 a month. He has received advancements and his salary has risen through the years; thus, in 1974, his gross income was $21,780; in 1975, $23,980; in 1976, $26,500; and in 1977, $27,750. His net monthly salary was $1,550 at the time of trial.

Respondent inherited $7,000 from her mother in 1975, and in October 1976 she rented a part of her house for a 1-year term for $150 per month, but did not plan to do so again. She did not attempt to keep the payments from respondent, her inheritance,

and her other income separate. Her present assets include the equity in her home, valued at $15,000 or $20,000; savings of approximately $7,700; household furnishings valued at $1,500 to $2,000; and a half interest in an automobile valued at $1,000. Appellant has a few household goods of little value; a checking account with a balance of $250 at the time of trial and a credit union account with a balance of $1,000; a 1977 automobile he valued at $4,000 and on which he owed $4,000; and his Honeywell retirement plan, which the parties stipulated would cost $23,500 to purchase and from which his current estimated accrued benefit is $630 a month at normal retirement age. He had given another automobile valued at $650 to a son shortly before trial and had debts of $1,000.

Respondent testified that she has living expenses of $911 per month, including a mortgage payment of $321. She said that she had reduced her contribution to her employer's pension plan and her deduction for savings in the employer's credit union and had used savings regularly since appellant ceased sending her money. She admitted that in response to a letter from appellant's lawyer advising her that appellant would continue to pay for the children's college expenses she had written that "[s]ince the division of the property has already been made, no other division is necessary," but said that when she wrote this she was referring to the house that the parties had owned in Minnesota.

Appellant estimated his living expenses at $1,375 per month, including $135 for rent, $450 for food, $200 for entertainment, and $150 for miscellaneous expenses.

On this evidence the trial court found that there had been a course of conduct by appellant detrimental to the marriage relationship and that serious marital discord affecting the attitude of one or both of the parties existed, resulting in an irretrievable breakdown of the marriage relationship of the parties. The court also found that respondent was in need of financial assistance through alimony and that appellant was

able to provide it; awarded her $250 per month as permanent alimony; required appellant to keep in force his group life insurance policies for respondent's benefit; gave respondent exclusive title to the Colorado property; and gave appellant exclusive title to the Honeywell retirement plan.

The court denied appellant's subsequent motion for amended findings or a new trial except for modifying its order to provide that he should be credited the sum of $50 per month for 75 months against the alimony to be paid (a total of $3,750), representing the part of his share of the proceeds of the sale of the Minnesota home which he had not received.

Appellant contends in this court that the award of alimony was improper because respondent has no need of support from him, because the parties had a "self-determined financial arrangement (contract)" in lieu of alimony, and because the award was based on erroneously admitted evidence of his marital misconduct in 1966 and is punitive in effect.

We find no merit in the first two contentions. Respondent's candid testimony with respect to her monthly take-home pay, her assets, her future employment prospects, and her average monthly expenses supports the finding of her continuing need for financial assistance from appellant and the alimony award of $250 per month. The second contention is also without merit since the record reveals no evidence of any contract between the parties which precluded respondent from seeking alimony.

Appellant's argument that the trial court erroneously admitted and considered evidence of his misconduct is not persuasive. In *Peterson v. Peterson*, 308 Minn. 365, 242 N.W.2d 103 (1976), we held that, upon a proper showing, evidence of marital misconduct should be admitted as one of the many factors to be considered by the trial court in the exercise of its broad discretion in the division of property and the award of alimony.[1] The record estab-

---

1. This holding was abrogated prospectively by L.1978, c. 772, §§ 51 and 53, effective March 1, 1979, which direct that maintenance orders (formerly alimony) shall be in amounts and for

lishes that the court clearly understood that such conduct was only one of those factors, and on the facts in this case—in which, after several years of conduct subversive of the parties' marriage, appellant by unilateral decision and action chose to abandon all marital and parental responsibilities, other than financial,—we hold that admission and consideration of evidence of such conduct was not an abuse of discretion. Moreover, both the moderate amount of the initial award and its subsequent amendment to effect an even distribution of the proceeds from the sale of the parties' Minnesota home refute the charge that the award was punitive.

Respondent is awarded attorneys fees of $350 and costs.

·Affirmed.

periods of time as the court deems just "without regard to marital misconduct" and that the court shall make a just and equitable disposition of marital property "without regard to marital misconduct . . ."