In Re the Marriage of Scott A. CHAMBARD, petitioner, Respondent,

v.

Gail CHAMBARD, Appellant.

No. CO-83-1891.

Court of Appeals of Minnesota.

May 29, 1984.

Diane E. Norman, Mankato, for appellant.

Clark A. Tuttle III, New Ulm, for respondent.

Considered and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This is an appeal from the trial court's splitting custody of two children. Custody of the older child was granted to the wife; custody of the younger child was granted to the husband. We affirm.

## FACTS

Scott and Gail Chambard, both 27 years old, had known each other in high school, but were not close. After graduation, Scott joined the Air Force. He was a mechanic in Grand Forks, North Dakota for most of his military career. Discharged in the summer of 1978, he returned to New Ulm. The Chambards renewed their acquaintance and moved in together within a year of his discharge. They married on August 16, 1980.

Gail had been married twice before she married Scott. She was first married in 1974, at the age of 18, to D.L., a former soldier. They married 3 weeks after she had given birth to John, the elder of the children in this custody dispute. It was a stormy marriage, with overtones of abuse and alcohol. They divorced six months after the marriage.

Gail testified that her second marriage to D.R., a former soldier, followed a similar pattern. Her description of Scott followed the same pattern. She admits there is a pattern in her relationships, although she testified that she has changed her ways. The psychologist who prepared the custody report for the court also expressed concern about the pattern and Gail's perception of the relationships:

A   It appears that there are some similarities in the types of men she's picked, but there are also some similarities in the dynamics of the relationship once it has developed. Gail indicated that the men she married did not drink before she married them, that she saw them as really fairly healthy individuals before she married them, but once the marriage relationship was formed, the marriage deteriorated in each case and they—

Q   Well—

A   —ended up being what she termed violent alcoholics. So it may be several dynamics went on here. As I outlined in my report, one is the types of men she chooses, and the other is what happens once that choice is made, and the way that she reacts to these individuals.

After returning to New Ulm from the Air Force, Scott worked a number of seasonal jobs. In September of 1978, he found a full-time job as a diesel mechanic with New Ulm Freight Lines. The job paid well, but at Gail's insistence, Scott quit in March of 1980. According to Scott, Gail complained about the long work hours; according to her, she was concerned that he was drinking too much on the job. He then took a job with Knopke Motors as a shop foreman. The job paid less, but the hours were better. In September of 1981, he left the Knopke Motors job to enter Mankato State University under the G.I. Bill. Since then, he has held a number of part-time jobs to supplement his G.I. Bill benefits.

Gail was employed at 3M, but quit after discovering that she has multiple sclerosis. The disease is currently in remission. She now attends Mankato State University.

Apparently both have had alcohol problems. Both have a tendency to abuse alcohol, but neither was found to be chemically dependent. In fact, both had identical scores on the Mac-Andrew Profile of the Minnesota Multi-Phasic Inventory Test. The score, according to a psychiatrist, indicated that both have about the same propensity to become alcoholics as a normal person. Scott has sought counselling concerning his alcohol problems. Gail has had emotional and psychological counseling since her teenage years.

The Chambards' eldest son, John, now ten years old, has had three fathers. After Gail married D.R., D.L. voluntarily terminated his parental rights toward John. D.R. adopted John, but also terminated his parental rights after the marriage broke up. Scott then adopted John.

The youngest child, Ross, was born November 4, 1981 and is now two and a half years old. Scott is Ross's natural father.

When Scott originally filed for a dissolution, he only asked for custody of Ross. A custody study was conducted by County Court Services. The study recommended that custody of both children be given to Scott. The guardian ad litem for the children also recommended that he have custody. Scott asked at the hearing for custody of both children.

Scott now lives with his parents. The record does not indicate where Gail is living, although she has apparently sold the mobile home the couple lived in since she is receiving payments on a contract. Both testified that they hoped to remarry someday.

Both of the parties have faults. With a bitter rivalry and far less than ideal parents, the trial court faced an almost insoluble problem attempting to determine which parent would best protect and promote the children's welfare. The court split custody, giving custody of the eldest child to the mother and the youngest to the father.

### ISSUE

Did the trial court abuse its discretion by splitting custody of the children?

### ANALYSIS

■ Under Minnesota Law, the trial court must determine custody in light of the best interests of the children involved. Minn.Stat. § 518.17(1) (1982); *LaBelle v. LaBelle*, 296 Minn. 173, 207 N.W.2d 291 (1973). The trial court has broad discretion and will not be reversed but for a clear abuse of discretion. *Peterson v. Peterson*, 308 Minn. 365, 242 N.W.2d 103 (1976). The trial court sees the evidence first hand and can judge the credibility of the witnesses better than an appeals court looking at a dry written record. Where credibility of witnesses is the major issue, appellate courts are reluctant to overturn the trial court. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252 (Minn.1980).

■ Splitting custody between parents is not a common occurrence. The Minnesota Supreme Court has, in fact, termed such a decree "unfortunate". *Schultz v. Schultz*, 266 Minn. 205, 208, 123 N.W.2d 118, 121 (1963). Nonetheless, the Supreme Court gives great deference to the trial court's conclusion if it is supported by evidence. In a case where all the testimony except the recommendation of the county welfare workers urged that a group of children be kept together, the Supreme Court upheld a trial court's decision to split custody of the children:

However, custody of the children is a matter that rests so largely in the discretion of the trial court that we are reluctant to interfere with it, even here, where it appears to us that it would have been better to have awarded the custody of all the children to one parent or the other, with proper rights of visitation granted to the other .... [W]e are unwilling to interfere with the court's decision awarding custody.

*Borchert v. Borchert*, 279 Minn. 16, 19–20, 154 N.W.2d 902, 905 (1967).

Here, the trial court split custody reluctantly, since serious doubts about the mother's emotional stability were presented. Both the guardian ad litem and the Court Services' report recommended that Scott have custody of both children. However, since John, the older, had formed a good deal of emotional attachment to his mother while Ross, the younger, had not developed such an attachment, and since the trial court was concerned that Ross might be favored over John by Scott and his parents, the court gave Gail custody of John and Scott custody of Ross.

In the case of the younger child, the trial court followed the recommendations of the Court Services psychologist and the guardi-

an ad litem. The main concern of the court and the guardian was Gail's emotional stability and her past patterns of marriages. Both indicated that she had a great deal of difficulty meeting her own emotional needs. The Court Services psychologist noted that she was confused, greedy, emotionally unstable with an identification confusion. The trial court agreed, and had evidence supporting its finding, that Scott could provide a better, more stable environment for Ross.

In the case of the older child, the trial court weighed John's relationship with his mother more heavily than the recommendation of Court Services or the guardian. John has had little stability in his life. His only constant relationship has been with his mother. John expressed fears to the guardian about being separated from his mother. There is sufficient evidence for the court to find it in John's best interest to live with his mother.

By no means is Scott a perfect father. He has, as the court recognized, many faults. Gail's brief to this court merely recited Scott's faults while ignoring his good points and her own faults. This does not show that the trial court abused its discretion. Rather, the trial court heard all the evidence and made a judgment as to which parent would be best for John and which would be best for Ross. By granting liberal visitation, the trial court sought to mitigate separating the children from each other. The court's decision is based on the evidence.

### DECISION

The trial court order giving custody of one child to the mother and one child to the father was not an abuse of discretion.

Affirmed.