Barbara (Lundell) JOHNSON,
petitioner, Respondent,

v.

Leslie V. LUNDELL, Appellant.

No. C2-84-381.

Court of Appeals of Minnesota.

Jan. 22, 1985.

James B. Storkamp, Hastings, for respondent.

Martha A. Eaves, Southern Minnesota Regional Legal Services, Inc., St. Paul, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and SEDG-WICK, JJ.

## OPINION

SEDGWICK, Judge.

Since her marriage to Leslie Lundell was dissolved in 1979 Barbara Lundell has had custody of the two minor children, Nancy and Daniel, who are now 16 and 10 years of age respectively. Both parents have remarried. Leslie moved to change custody at the request of the children. The trial court found the current custody situation endangered Nancy's, but not Daniel's, emotional health and split custody between the parents. Leslie appeals. We affirm in part and reverse in part.

## FACTS

Barbara married Milo Johnson in November 1979. At the request of the children, Leslie first moved for custody modification in 1981, which was denied. In 1983, Barbara received court approval to move to

Texas. During the scheduled two week visit with their father prior to the Texas move the children told Leslie they would not return to their mother's home. This custody action followed.

Basically the children both objected to Milo's demands for hugs and kisses and Nancy's perception that Milo's hugs were not fatherly but were sexually suggestive. She also complained of Milo's frequent discussions of his sexual exploits and asking personal questions of her. Without making findings on the truth of these allegations, the court concluded that Nancy's perceptions had adversely affected her relationship with Barbara because the mother always sided with Milo and disbelieved Nancy's statements that Milo was always talking to her about sex.

Both children have apparent equal respect and love for both natural parents, both like their father's wife Norma, and both have positive things to say about Milo. But Milo makes them uncomfortable because he is loud, "volatile," demands affection, puts down their father, and swears and throws things when angry. He has negatively compared Daniel to his son by a prior marriage and punished Daniel by carrying him around by his ears. He has also done positive things with Daniel, takes him to breakfast before school on occasions and shows an interest in the boy. The children's natural father, by contrast, does not appear to have mood swings and is a calmer personality.

Nancy and Daniel have been close despite the difference in age and they have been moral support for each other in response to Milo's actions when their mother sided with Milo. Both children state they want to stay together.

With consent of the parties, the court ordered a custody investigation from court services in both Texas and Minnesota and provided that these reports would be admissible at subsequent hearings. At the time of the hearing, however, Barbara objected to the Texas report as hearsay.

## ISSUES

1. Did the trial court err in transferring custody of Nancy but not Daniel to their father?

2. Did the trial court err in excluding as evidence the custody evaluation prepared by the Texas social worker?

3. Did the trial court err in denying Barbara's motion for attorney's fees and costs?

## DISCUSSION

1. Minn.Stat. § 518.18 (1982) governs modification of custody orders. *Gunderson v. Preuss,* 336 N.W.2d 546, 548 (1983). Minn.Stat. § 518.18(d) indicates the court should not modify a prior custody order unless it finds:

(1) that a change has occurred in the circumstances of the child or his custodian;

(2) that the modification is necessary to serve the best interests of the child; and

(3) the child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

*See Chapman v. Chapman,* 352 N.W.2d 437, 440 (Minn.Ct.App.1984).

A trial court has broad discretion in awarding child custody and its discretion will not be set aside unless it was arbitrary or a clear abuse of discretion. *See e.g., Peterson v. Peterson,* 308 Minn. 365, 368, 242 N.W.2d 103, 106 (1976); *Carroll v. Carroll,* 356 N.W.2d 449 (Minn.Ct.App. 1984). However, where the trial court's conclusions are not supported by the record this court will correct the error.

The trial court found that Milo Johnson uses vulgar and profane language and "puts down" their father in the presence of both children while their mother tolerates such conduct. The court also found that Milo uses inappropriate punishment in the discipline of Daniel. Moreover, the record indicates that both children have expressed

a preference to live with their father since 1979.

When they still lived in Minnesota, the children had to arrange visitation with their father in a way that would not involve personal contact between their father and Milo. They would arrange to be picked up and dropped off at school and to receive telephone calls and letters at other places because of Milo's antagonism to their father. The children found this extremely stressful. Since they moved to Texas, letters mailed by the father were opened and read and some were not given to the children immediately.

Barbara admitted that her husband puts the children's father down in their presence. The Minnesota Supreme Court has held that a change of custody was necessary to thwart a manifest purpose of a custodial parent and her present husband to alienate the children from the affection and influence of their father. *Henrikson v. Henrikson*, 288 Minn. 532, 533, 179 N.W.2d 284, 285 (Minn.1970). Although no "manifest purpose" to alienate the children is attributed to the children's mother in this case, she does stand silent during her husband's denigration of their father.

The record supports a conclusion that there had been a breakdown in the relationship between Milo and Daniel because of Milo's abusive language, inappropriate physical punishment and denigration of Daniel's father. Leslie argues that the tension produced by this behavior combined with separation from his sister creates an environment that endangers Daniel's emotional health.

■ Courts have allowed separation of children where evidence shows it to be in their best interest, however, it is not preferred. *See Schultz v. Schultz*, 266 Minn. 205, 208, 123 N.W.2d 118, 121 (1963); *Chambard v. Chambard*, 348 N.W.2d 821, 823 (Minn.Ct.App.1984). This preference recognizes the sibling relationship as a significant aspect of family stability which is particularly important where the family has already been disrupted by loss of one parent from the home.

Barbara argues the trial court's discretion in such matters precludes reversal, citing *Chambard* where this court approved splitting custody of two brothers. There, however, the older brother had formed a strong attachment to the mother while the younger son had not. *Chambard* at 823. The factors which made separation of brothers acceptable in *Chambard* are not present here.

■ It is apparent from the record that Nancy has been an important constant in Daniel's life. Splitting the children in this case leaves Daniel alone to deal with a step-father with whom he is uncomfortable, who uses verbal abuse and inappropriate physical punishment toward him, and who denigrates his natural father. The situation is exacerbated because the mother's home is in Texas while the father and sister are in Minnesota and because the mother has consistently taken her husband's side in disputes involving the children. These factors compel the conclusion that Daniel's present environment endangers his emotional health.

■ The court must then weigh the harm likely to be caused by changing his present environment against the advantage of such change. The harm to be caused Daniel by changing custody to his father is loss of his mother whom he loves and with whom he has always lived. In fact, the record indicates that were it not for her husband, Daniel would probably not desire a change in custody. Balanced against this is removal to his father's home, where his sister resides. Daniel wants to live with his father because he loves his father, likes his step-mother, wants to be with his sister, and wants to escape the anxiety present in his mother's home.

■ The court erred in not giving appropriate weight to these factors, in disregarding Daniel's preference, and in failing to recognize Daniel's relationship with his sister and the role she assumed in being moral support for him in Milo's home.

2. Minn.Stat. § 518.167 (1982) governs investigation and reports concerning custodial arrangements for children. Subdivision 2 provides the investigator's report may be received into evidence if the requirements of Subdivision 3 are met. Subdivision 3 states in relevant part:

> * * * A party to the proceeding may call the investigator and any person whom he has consulted for cross-examination at the hearing. A party may not waive the right of cross-examination before the hearing.

The Minnesota Supreme Court has held that it is:

> [T]he responsibility of the trial court in custody cases to provide the parties with an opportunity to read evaluation reports and to cross-examine the author *or otherwise meet or answer adverse facts therein.*

*Scheibe v. Scheibe,* 308 Minn. 449, 450, 241 N.W.2d 100, 101 (1976) (emphasis added). *See also VanZee v. VanZee,* 302 Minn. 371, 375, 226 N.W.2d 865, 867 (1974).

Although a hearsay objection is valid and sustainable as to the document, it is unreasonable that parties can stipulate to a custody study and then prevent its introduction on the day of trial, thereby depriving the trial court of what may be the only objective assessment of home conditions outside this state's jurisdiction.

 As *Scheibe* and *VanZee* point out, the parties must either have the opportunity to cross examine the author or otherwise meet or answer adverse facts therein. This right to cross examine should be exercised in time to make appropriate arrangements such as deposition of the author, or a telephone conference call during the hearing. Waiting until the moment when the report is to be introduced without making appropriate arrangements to depose or obtain the author's appearance is a waste of court resources and should result in a partial continuance for the objecting party to make necessary arrangements and costs against that party. In this case the Texas court services officer was the only person to interview Milo, who was the central figure in the custody dispute and who did not appear at the hearing. Barbara should have arranged with the court the manner of exercising her right under Minn.Stat. § 518.167, subd. 3. However, the refusal to receive the report did not constitute reversible error.

3. *Attorneys Fees.*

 Allowance of attorneys fees and costs in dissolution actions lies almost entirely within the trial court's discretion. *Solon v. Solon,* 255 N.W.2d 395 (Minn. 1977); *Deliduka v. Deliduka,* 347 N.W.2d 52, 57 (Minn.Ct.App.1984). Barbara claims the trial court abused its discretion in this case by not awarding her fees and costs because (1) the proceedings were extensive and protracted; (2) she is forced to litigate the matter from Texas; (3) she has committed a large amount of her financial resources toward purchasing a new home; and (4) she has provided sole support for the two children since the dissolution.

 Barbara has not shown that she was unable to pay her necessary expenses; she is responsible for her residence out of state; and there has been no claim that Leslie's custody motion was frivolous or in bad faith. The trial court's refusal to grant fees and costs was not an abuse of discretion.

**DECISION**

The trial court's decision to split custody of the children in this fact situation was error. Daniel has an anxious relationship with his step-father, has repeatedly requested to live with his father, and does not want to be separated from his sister. Daniel's best interests lie with his father and sister. We affirm the trial court's decision to grant custody of Nancy to her father and reverse its decision as to Daniel. Custody of Daniel is granted to his father.