In the Matter of the
**WELFARE OF J.M.G.**

**No. C1–85–463.**

Court of Appeals of Minnesota.

Nov. 12, 1985.
Review Denied Jan. 17, 1986.

Candace Joy Barr, Minneapolis, for appellant Kathy Colias.

Ann Stiehm Ahlstrom, Minneapolis, for Hennepin County Bureau of Social Services.

William J. Briere, Edina, for J.G., Father.

Janet V. Worel, Osseo, for S.G., Mother.

Wright S. Walling, Minneapolis, for Maternal Grandparents.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and LESLIE, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal taken by the Guardian Ad Litem from an order granting custody to the mother, based upon the claim that the trial court improperly considered custody evaluation reports in determining custody and that the decision is unsupported by the evidence. We affirm.

## FACTS

J.M.G. was born on September 11, 1981, and was placed in foster care on September 25, 1981. A neglect and dependency petition was filed on September 28, 1981. J.M.G. was adjudicated dependent as to her mother on September 22, 1983.[1] The mother and father were divorced in Louisiana on December 21, 1983, and the mother is now remarried. Pursuant to the Louisiana decree, the mother was awarded custody of the child, subject to the decisions of the Hennepin County Juvenile Court regarding the dependency of the child. J.M.G. was adjudicated dependent as to her father on April 20, 1984.[2] Shortly before this appeal, the maternal grandparents filed a petition for termination of parental rights and for adoption. These actions are still pending.

As to the mother, the court ordered that she meet the following goals relevant to this appeal before being allowed custody of her daughter:

J.M.G.'s mother will raise her ability to parent her child to a minimally accepted level by:

a. Attending a Parent Education Group in her community in Louisiana to learn basic child development facts and demonstrate an insight into a child's emotional needs and intellectual ability.

b. The mother will attend counseling/therapy with a psychologist, a minimum of five times with her husband to assess the mother's ability to parent her child.

c. The mother shall undergo a thorough psychiatric evaluation to ascertain a current diagnosis, treatment plan, and prognosis. The Hennepin County Bu-

---

1. A "dependent child" is generally one without proper parental care due to an emotional or physical disability of the parent(s). Minn.Stat. § 260.015, subd. 6(d) (1984). The mother in this case was diagnosed as having some form of schizophrenia.

2. This court in a decision dated January 8, 1985, vacated and remanded that order. *See In re Welfare of J.M.G.,* 360 N.W.2d 403 (Minn.Ct. App.1985).

reau of Social Services shall provide the psychiatric evaluator with a background of the mother.

 \* \* \* \* \* \*

In accordance with goal 1(g), the Hennepin County Bureau of Social Services transmitted a copy of the court-ordered goals to the State of Louisiana Department of Welfare (Health and Human Services).[3] The mother elected to be assisted by the Louisiana authorities in completing her goals.

On February 12, 1985, following a five-day trial at which the main issues were whether the mother had completed her goals and whether it would be in the child's best interest to return with her mother to Louisiana, the court made the following findings and conclusion relevant to this appeal:

### FINDINGS OF FACT

#### I.

That [she] completed Goal 1a by attending a parent education group at the Parenting Center in Baton Rouge, Louisiana as documented in a letter from Belva Mitchell, Director of the center, dated December 1, 1983.

#### II.

That [she] completed goal 1b by attending six counseling/therapy sessions along with her husband with Nancy Bogan, BCSW, of the State of Louisiana, Department of Health and Human Resources as documented by a letter from Nancy Bogan dated February 15, 1984.

#### III.

That [she] completed goal 1c when she was evaluated by Dr. S.R. Chalasani, a psychiatrist and Dr. Rose Bergeron, a psychologist at the Baton Rouge Mental Health Clinic. Their reports adequately

document her current ability to act as a responsible parent.

### CONCLUSIONS OF LAW

1. That [she] has completed the Court ordered goals and that she, with assistance, is currently able to parent her child.

The foster parents, guardian ad litem in this case, appeal from the trial court's decision granting custody to the mother, claiming that the trial court improperly considered the custody evaluation reports in making its decision and that the decision is unsupported by the evidence.

### ISSUES

1. Did the trial court properly consider the custody evaluation reports in determining custody?

2. Is the trial court's custody decision supported by the evidence?

### ANALYSIS

■ 1. We observe at the outset that the custody evaluation reports were properly received by the trial court. Minn.Stat. § 260.181, subd. 2 (1984) provides:

> Before making a disposition in a [child custody] case \* \* \* the court may consider any report or recommendation made by the county welfare board \* \* \* or any other relevant information deemed material by the court.

We see no reason to differentiate the County Welfare Boards of Minnesota and Louisiana in light of their comparable trustworthiness and the fact that there is a compact between the two states. *See* Minn.Stat. § 260.51 (1984).

In addition, Minn.R.Juv.Cts. 62.04, subd. 2, and 62.07, subd. 4 (1984), provide that at formal review and disposition hearings:

> the court may receive any information, except privileged communications, that is

---

**3.** "1(g) That the Hennepin County Bureau of Social Services shall transmit a copy of this Order to the local Welfare authorities in the State of Louisiana and request the local Wel- fare authorities in Louisiana to assist Respondent mother in these Court ordered goals, if she so seeks their assistance."

relevant to the disposition of the cause, including reliable hearsay and opinions.

We also note that the custody evaluation reports prepared by the State of Louisiana Department of Welfare are considered reliable hearsay under the business records exception to the hearsay rule. Minn.R. Evid. 803, subd. 6 (1984). *See In re Welfare of R.T. and L.T.*, 364 N.W.2d 884, 887 (Minn.Ct.App.1985).

Appellant does not challenge the sufficiency of the evidence contained in the custody evaluation reports, but argues that the trial court's use of the reports without their formal introduction into evidence at trial violates the right to cross-examine the authors of the reports.

As our supreme court has stated, the use of court-ordered evaluations should be encouraged because they are an invaluable aid to the court in determining the issue of custody; however, care should be taken to give fair notice of the contents of such reports to the parties involved so as to afford them every *opportunity* to test the credibility of the reporter through cross-examination or otherwise *and* to meet or answer every adverse fact or inference therein.

*Stanford v. Stanford*, 266 Minn. 250, 258, 123 N.W.2d 187, 192 (1963) (emphasis added). *See also Scheibe v. Scheibe*, 308 Minn. 449, 450, 241 N.W.2d 100 (1976); *State ex rel. Fisher v. Devins*, 294 Minn. 496, 500, 200 N.W.2d 28, 32 (1972); *Johnson v. Lundell*, 361 N.W.2d 125, 129 (Minn.Ct.App. 1985).

 We are satisfied (1) that appellant was afforded fair notice of the contents of the reports, and (2) that appellant had every opportunity to exercise the right to cross-examine the authors *and* otherwise meet or answer the adverse facts contained in the reports. Appellant received a copy of each of the custody evaluations in accordance with goal 3 of the 1983 Order and appellant's counsel quoted from the reports

at trial.[4] Appellant's counsel also attacked the evidence contained in the reports through testimony from Dr. Bauer, psychiatrist, and Kathy Colias, social worker. Further, appellant made no objection to the court's receiving the reports or use and reference to them at trial. Appellant made no request for an order permitting cross-examination of any of the authors nor made use of any other tools of discovery. In fact, at one point during the trial, the question was raised by one of the parties whether the authors should be present or deposed, to which appellant's counsel responded, "I have no intention of getting into that area." The opportunity to cross-examine the author is waived if not exercised in a timely manner. *Johnson v. Lundell* at 129. *See Evans v. Evans*, 276 Minn. 552, 554, 149 N.W.2d 383, 384 (1967); *see also* Annot., 59 A.L.R.3d 1337 (1978). While the better practice would have been to formally introduce the court-ordered custody evaluations at the hearing, we are satisfied that appellant has been afforded due process of the law in this instance.

2. Appellant also contends that the decision is not supported by the evidence. Appellant argues that it is not in the best interests of the child to return to her mother because of the mother's mental health.

 There is ample support in the record to support the trial court's conclusion that the mother is currently able to parent the child. In addition to the court-ordered evaluation reports recommending that the mother is capable of parenting J.M.G., there was other testimony at trial supporting this conclusion. Steve Zorn of the Hennepin County Bureau of Social Services prepared a progress report in accordance with goal 4 and testified recommending J.M.G. be returned to the mother. There was also testimony from Virginia Frickstad, social worker, to the same effect. Moreover, Dr. Jacobson, psychiatrist, testified that after evaluating the mother,

---

4. "[a]ll reports sought from * * * Louisiana will be released to the Hennepin County Child Protection Department, counsel, and the Juvenile Court."

Counsel for appellant at trial:
" * * * and then clearly in the report of Rose Bergeron [psychologist] * * * in the first paragraph of that report she discusses * * * "

it is his opinion that the mother does not have a thinking disorder or a mood disorder and that "her past diagnosis as having some form of schizophrenia, even if valid when made, has no strong bearing at this time." Appellant introduced the testimony of Dr. Bauer, psychiatrist, to rebut the testimony of Dr. Jacobson. Where opinions of experts conflict, as they do here, the finder of fact is to determine the more credible and acceptable view. *State ex rel. Trimble v. Hedman,* 291 Minn. 442, 456, 192 N.W.2d 432, 440 (1971). Here, the trial court accepted Dr. Jacobson's view, along with the recommendations from Louisiana and Minnesota authorities. We do not find this conclusion erroneous.

Under the unique facts of this case, the child, now almost four years old, separated from the mother only two weeks after birth, the relatively short and unsuccessful bonding period (45 days) in 1984 consisting of mere visitation and counseling sessions, and the fact that over a year has elapsed since the bonding period, it may be questionable whether an immediate, abrupt change from a stable, secure environment to a totally new environment is in the best interests of the child.[5] However, this court is unwilling to substitute its judgment for that of the trial court in the adequacy of the bonding period.

Appellant advances several other reasons why it is not in the best interests of the child to be reunited with her mother, such as potential problems with the natural father or that the child may develop special needs which the mother will be incapable of handling. We are unconvinced by these arguments and see no other compelling jus-

tification to deny the mother custody in this case.

Should the circumstances change, the Welfare Department of the State of Louisiana can be relied upon to take proper action in accordance with the trial court's order that it provide protective supervision of the child pursuant to the Interstate Compact Act.

Affirmed.

---

5. The trial court's emphasis on the ability of the mother to now adequately parent the child, with proper counseling and protective supervision by the State of Louisiana, is not the sole determinative factor.

It is thoroughly settled law that the parent's right to the care, custody and control of his minor children is paramount to all other considerations, save the best interests of the child * * *. But in all controversies involving the custody of minor children, the welfare and best interests of the child are the chief consideration and prevail over the natural right of

the parent. This is too well settled to require the citations of authority.

*State ex rel. Larson v. Halverson,* 127 Minn. 387, 388, 149 N.W. 664, 665 (1914). *See State ex rel. Jaroszewski v. Prestidge,* 249 Minn. 80, 81 N.W.2d 705 (1957); *State ex rel. Rys v. Vorlicek,* 229 Minn. 497, 40 N.W.2d 350 (1949); *State ex rel. Ashcroft v. Jensen,* 214 Minn. 193, 7 N.W.2d 393 (1943); *State ex rel. Link v. Mason,* 179 Minn. 472, 229 N.W. 582 (1930); *State ex rel. Henning v. Gundvaldson,* 169 Minn. 335, 211 N.W. 310 (1926). *See also* Minn.Stat. § 260.191, subd. 1a(a) (1984).